EXHIBIT "A"



| Court's Address and Phone Number:<br>ATLANTIC Special Civil Part<br>1201 BACHARACH BOULEVARD<br>ATLANTIC CITY, NJ 08401-0000<br><br>609-402-0100 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br>**ATLANTIC** County<br>Docket No: **ATL-DC-003454-21**<br>**Civil Action**<br>**CONTRACT DISPUTE** |
|---|---|

## YOU ARE BEING SUED!

| **Person or Business Suing You (*Plaintiff*)**<br>BMW AUTO SALES, INC.<br><br>**Plaintiff's Attorney Information**<br>JOSEPH D LENTO<br>LENTO LAW GROUP, P.C.<br>3000 ATRIUM WAY STE 200<br>MT LAUREL, NJ 08054-0000<br>856-652-2000 | **Person or Business Being Sued (*Defendant*)**<br>RED WOLF LOGISTICS, LLC. | |
|---|---|---|
| | **The Person or Business Suing You Claims You Owe the Following:** | |
| | Demand Amount | $15000.00 |
| | Filing Fee | $75.00 |
| | Service Fee | $7.00 |
| | Attorney's Fees | $.00 |
| | **TOTAL** | **$15082.00** |

### FOR JUDICIARY USE ONLY

In the attached complaint, the person or business suing you briefly tells the court his or her version of the facts of the case and how much money he or she claims you owe. **If you do not answer the complaint, you may lose the case automatically and the court may give the plaintiff what the plaintiff is asking for, plus interest and court costs. You have 35 days from the date of service to file your answer or a signed agreement.** If a judgment is entered against you, a Special Civil Part Officer may seize your money, wages or personal property to pay all or part of the judgment. The judgment is valid for 20 years.

**IF YOU DISAGREE WITH THE PLAINTIFF'S CLAIMS, A WRITTEN ANSWER OR SIGNED AGREEMENT MUST BE RECEIVED BY THE COURT ABOVE, ON OR BEFORE 08/09/2021, OR THE COURT MAY RULE AGAINST YOU. IF YOU DISAGREE WITH THE PLAINTIFF, YOU MUST DO ONE OR BOTH OF THE FOLLOWING:**

1.  ***Answer the complaint***. An answer form that will explain how to respond to the complaint is available at any of the New Jersey Special Civil Part Offices or on the Judiciary's Internet site njcourts.gov under the section for Forms. If you decide to file an answer to the complaint made against you:
    - Fill out the Answer form AND pay the applicable filing fee by check or money order payable to: ***Treasurer, State of New Jersey***. Include **ATL-DC-003454-21** (your Docket Number) on the check.
    - Mail or hand deliver the completed Answer form and the check or money order to the court's address listed above.
    - Hand deliver or send by regular mail a copy of the completed Answer form to the plaintiff's attorney. If the plaintiff does not have an attorney, send your completed answer form to the plaintiff by regular and certified mail. This MUST be done at the same time you file your Answer with the court on or before **08/09/2021**.

2.  ***Resolve the dispute***. Contact the plaintiff's attorney, or contact the plaintiff if the plaintiff does not have an attorney, to resolve this dispute. The plaintiff may agree to accept payment arrangements. If you reach an agreement, mail or hand deliver the **SIGNED** agreement to the court's address listed above on or before **08/09/2021**.

**Please Note - You may wish to get an attorney to represent you.** If you cannot afford to pay for an attorney, free legal advice may be available by contacting Legal Services at 609-348-4200. If you can afford to pay an attorney but do not know one, you may call the Lawyer Referral Services of your local County Bar Association at 609-345-3444. Notify the court now if you need an interpreter or an accommodation for a disability for any future court appearance.

/s/ Michelle M. Smith

Clerk of the Superior Court



| Dirección y teléfono del tribunal<br>Parte Civil Especial de ATLANTIC<br>1201 BACHARACH BOULEVARD<br>ATLANTIC CITY, NJ 08401-0000<br>609-402-0100 | El Tribunal Superior de Nueva Jersey<br>**División de Derecho, Parte Civil Especial**<br>Condado de **ATLANTIC**<br>Número del expediente ATL-DC-003454-21<br>**Demanda de Acción Civil**<br>NOTIFICACIÓN DE DEMANDA<br>**CONTRACT DISPUTE** |
|---|---|

## ¡LE ESTÁN DEMANDANDO!

| Persona o entidad comercial que le está demandando *(el demandante)*<br><br>BMW AUTO SALES, INC.<br><br>**Información sobre el abogado del demandante**<br>JOSEPH D LENTO<br>LENTO LAW GROUP, P.C.<br>3000 ATRIUM WAY STE 200<br>MT LAUREL, NJ 08054-0000<br>856-652-2000 | Persona o comercial ser demandada *(el demandado)*<br>RED WOLF LOGISTICS, LLC.<br><br>**La persona o comercial que le está demandando afirma que usted le debe lo siguiente:** |
|---|---|

| | |
|---|---:|
| Cantidad a la vista | $15000.00 |
| Tasa judicial | $75.00 |
| Cargo del emplazamiento | $7.00 |
| Honorarios del abogado | $.00 |
| **TOTAL** | **$15082.00** |

### PARA USO EXCLUSIVO DEL PODER JUDICIAL

En la demanda adjunta la persona o entidad comercial que le está demandando le informa brevemente al juez su versión de los hechos de la causa y la suma de dinero que afirma que usted le debe. **Si usted no responde a la demanda la causa puede perder automáticamente y el juez puede dar al demandante lo que usted está pidiendo más intereses y los costos legales. Usted tiene 35 días a partir de la fecha del emplazamiento para presentar su respuesta o un acuerdo firmado.** Si se dicta un fallo en su contra, un Oficial de la Parte Civil Especial puede embargar su dinero, sueldo o sus bienes muebles (personales) para pagar todo el fallo o una parte del mismo. El fallo es válido por 20 años.

**SI USTED NO ESTÁ DE ACUERDO CON LAS ALEGACIONES DEL DEMANDANTE, EL TRIBUNAL TIENE QUE RECIBIR UNA RESPUESTA POR ESCRITO O UN ACUERDO FIRMADO PARA EL 08/09/2021 O ANTES DE ESA FECHA, O EL JUEZ PUEDE EMITIR UN FALLO EN SU CONTRA. SI USTED NO ESTÁ DE ACUERDO CON EL DEMANDANTE, DEBE HACER UNA DE LAS SIGUIENTES COSAS O LAS DOS:**

1. *Responder a la demanda.* Un formulario de respuesta que le explicará cómo responder a la demanda está disponible en cualquiera de las Oficinas de la Parte Civil Especial de Nueva Jersey o en el sitio Internet del Poder Judicial njcourts.gov bajo la sección de formularios (Forms). Si usted decide presentar una respuesta a la demanda que se hizo en su contra:
   - Llene el formulario de Respuesta Y pague la tasa judicial de presentación que corresponda mediante un cheque o giro bancario o postal acreditable al: *"Treasurer, State of New Jersey "* (Tesorero del Estado de Nueva Jersey). Incluya **ATL-DC-003454-21** (el número de su expediente) en el cheque.
   - Envíe por correo el formulario de Repuesta llenado y el cheque o giro bancario o postal a la dirección del tribunal que figura más arriba, o entréguelos personalmente en dicha dirección.
   - Entregue personalmente o envíe por correo común una copia del formulario de Repuesta llenado al abogado del demandante. Si el demandante no tiene abogado, envíe su formulario de respuesta llenado al demandante por correo común y por correo certificado. Esto SE TIENE que hacer al mismo tiempo que presente su Respuesta al tribunal a más tardar el **08/09/2021.**

2. *Resolver la disputa.* Comuníquese con el abogado del demandante, o con el demandante si éste no tiene abogado, para resolver esta disputa. El demandante puede estar de acuerdo con aceptar arreglos de pago. **Si llegara a un acuerdo, envíe por correo o entregar personalmente el acuerdo FIRMADO** a la dirección del tribunal que figura más arriba, o entréguelo personalmente en dicha dirección a más tardar el **08/09/2021.**

**Nota – Puede que usted quiera conseguir que un abogado para que lo represente.** Si usted no puede pagar a un abogado, podría obtener consejos legales gratuitos si se comunica con Legal Services (Servicios Legales) llamando al 609-348-4200. Si usted puede pagar a un abogado, pero no conoce a ninguno, puede llamar al Lawyer Referral Services (Servicios de Recomendación de Abogados) del Colegio de Abogados (Bar Association) de su condado local al 609-345-3444. Notifique al tribunal ahora si usted necesita un intérprete o un arreglo por una discapacidad para cualquier comparecencia futura en el tribunal.

/s/ Michelle M. Smith

Subsecretario(a) del Tribunal Superior

LENTO LAW GROUP, P.C.
JOSEPH D. LENTO, ESQUIRE
ATTORNEY ID: 013252008
3000 ATRIUM WAY – SUITE 200
MOUNT LAUREL, NEW JERSEY 08054
(T) (856) 652-2000
(F) (856) 375-1010
jdlento@lentolawgroup.com
*Attorney for Plaintiff, BMW Auto Sales, Inc.*

| | |
|---|---|
| BMW AUTO SALES, INC.<br><br>    *Plaintiff*<br><br>    v.<br><br>RED WOLF LOGISTICS, LLC, JOHN DOES 1-10 (fictitious names), and ABC BUSINESS ENTITIES 1-10 (fictitious entities), j/s/a<br><br>    *Defendant(s)* | SUPERIOR COURT OF NEW JERSEY<br>ATLANTIC COUNTY<br>LAW DIVISION-SPECIAL CIVIL<br><br>DOCKET NO.: ATL-DC-<br><br><br>**CIVIL ACTION**<br><br>**COMPLAINT** |

    Plaintiff, BMW AUTO SALES, INC. with an address of 309 E. White Horse Pike, City of Galloway, County of Atlantic, and State of New Jersey, by way of Complaint against the Defendants, RED WOLD LOGISTICS, LLC,   JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, hereby states:

**PARTIES, JURISDICTION, & VENUE**

1.    At all times relevant herein, Plaintiff BMW AUTO SALES, INC. is a domestic for-profit corporation within the State of Delaware and incorporated under the laws of said State, with a corporate headquarters located at 2860 Ogletown Road, Building 3, Newark, Delaware 19713, but with a principal place of business located at TMX Finance at 309 E. White Horse Pike, Galloway, New Jersey 08205, and with a registered agent for service of process being Vladimir Senko servable at the same Galloway address.

2.     At all times relevant herein, Defendant RED WOLF LOGISTICS, LLC is, upon information and belief, a domestic limited liability company within the State of Texas and organized under the laws of said State, with a principal place of business believed to be 217 N. De Costa Street, Fort Worth, Texas 76111, and with a registered agent for service of process believed to be United States Corporation Agents, Inc. with a registered office for service of process believed to be located at 9900 Spectrum Drive, Austin, Texas 78717.

3.     At all times relevant herein, Defendants, JOHN DOES 1-10 (fictitious names) and ABC BUSINESS ENTITIES 1-10 (fictitious entities), are believed to be individuals or entities whose actions or omissions contributed in some relevant and material way to the causes of action complained of herein. Plaintiff does not presently know the true identities of these Defendants, but will seek leave to amend the Complaint to properly name these Defendants after conducting discovery, should the need arise.

4.     Jurisdiction is proper as Plaintiff has a principal place of business located within Atlantic County, New Jersey and venue is proper in Atlantic County Superior Court, Law Division, Special Civil Part, as per R. 6:1-2 and R. 6:1-3.

**GENERAL ALLEGATIONS**

5.     Plaintiff, BWM AUTO SALES, INC. purchased a 2020 Ford Explorer ST (the "Vehicle") from Copart Auto Auction located at 505 Idlewild Road, Grand Prairie, Texas 75051 on or about May 9, 2021.

6.     Defendant RED WOLF LOGISTICS, LLC, is an automotive transport trucking company and Motor Property Common Carrier operating under US DOT No. 3526663 and MC Operating Authority No. MC01172526.

7.    On or about May 13, 2021, Defendant RED WOLF LOGISTICS, LLC, picked up the Vehicle from the Copart auction yard such that it could be transported to its intended destination at 9100 Galveston Road, Suite 5, Houston, Texas 77034.

8.    The condition of the Vehicle, pre-pick up, was excellent, however, upon delivery of the Vehicle at said destination, however, the Vehicle was found to be severely damaged, with damage to the hood, front fender, and both front doors.

9.    Following an inspection of the damages by Plaintiff's insurance company on or about May 24, 2021, Plaintiff was provided with a quote for the estimated cost of repairs to the Vehicle, totaling $3,266.69 after tax. Find this quote annexed hereto as **EXHIBIT "A"**.

10.    Despite reasonable efforts by Plaintiff to amicably resolve this dispute with Defendant RED WOLF LOGISTICS, LLC, Defendant has, thus far, refused to reasonably negotiate with Plaintiff and settle Plaintiff's claim for damages arising from Defendant's conduct as alleged.

11.    As a direct result of Defendant's unwillingness to amicably resolve this matter, Plaintiff has been forced to incur legal fees in connection with the instant litigation.

## COUNT ONE
### PROFESSIONAL NEGLIGENCE
### As to Defendant Red Wolf Logistics, LLC

12.    Plaintiff repeats all of the allegations contained in the Complaint thus far above, and incorporates the same as if fully set forth at length herein.

13.    Defendant RED WOLF LOGISTICS, LLC holds itself out to the public as a professional automotive transport company and specifically a Motor Property Common Carrier.

14.    As such, Defendant owes a heightened duty of care to the public in the conduct of its business operations.

15.     Defendant has breached this duty of care with respect to the Plaintiff in that it failed to take due care in its execution of the automotive transport services Plaintiff contracted for.

16.     But-for the failure to Defendant to exercise due care in the execution of the contracted-for automotive transport service, the damage incurred to Plaintiff's Vehicle would not have resulted.

17.     It is reasonably foreseeable that Plaintiff or another such customer could incur damages as a result of a Motor Property Common Carrier's inattentive or careless manner of transport.

18.     Therefore, the failure of Defendant RED WOLF LOGISTICS, LLC to exercise due care commensurate with the heightened duty of a common carrier while undertaking the automotive transport services Plaintiff contracted for, was both the actual and proximate cause of Plaintiff's damages.

        **WHEREFORE**, Plaintiff BWM AUTO SALES, INC. demands judgment against the Defendant RED WOLF LOGISTICS, LLC, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT TWO
## BREACH OF CONTRACT
### As to Defendant Red Wolf Logistics, LLC

19.     Plaintiff repeats all of the allegations contained in the Complaint thus far above, and incorporates the same as if fully set forth at length herein.

20.     Plaintiff contracted with Defendant RED WOLF LOGISTICS, LLC as alleged above for Defendant's automotive transport services.

21.     Generally, Plaintiff contracted with Defendant such that Defendant would perform automotive transport of Plaintiff's Vehicle and that Plaintiff's Vehicle would arrive at its destination in reasonably the same condition it was in upon being picked up by Defendant.

22.    Defendant breached this contract with the Plaintiff, however, in that Defendant failed to perform under the contract, specifically, through its failure to deliver the Vehicle without being damaged by Defendant in transport, as Plaintiff had bargained for.

23.    As a result of Defendant's failure to perform under its contract with Plaintiff, Plaintiff sustained damages in that Plaintiff's Vehicle was damaged by Defendant's actions, causing Plaintiff to incur damages as alleged.

WHEREFORE, Plaintiff BWM AUTO SALES, INC. demands judgment against the Defendant RED WOLF LOGISTICS, LLC, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

### COUNT THREE
### CONSUMER FRAUD
### As to Defendant Red Wolf Logistics, LLC

24.    Plaintiff repeats all of the allegations contained in the Complaint thus far above, and incorporates the same as if fully set forth at length herein.

25.    The types of services promised to Plaintiff by Defendant RED WOLF LOGISTICS, LLC are "merchandise" within the scope of the New Jersey Consumer Fraud Act, codified at N.J.S.A. 56:8-1 et seq., as defined at N.J.S.A. 56:8-1(c).

26.    By engaging in the conduct as alleged above, Defendant has committed unconscionable commercial practices, deception, fraud, falsity, and/or misrepresentation in connection with the false representations and deceptive practices of the Defendant as described, in violation of the New Jersey Consumer Fraud Act.

27.    Specifically, on the "About" tab of its company Facebook page, Defendant RED WOLF LOGISTICS, LLC advertises to the public the following:

> Red Wolf Logistics, LLC was founded in 2020. Extensive research and strategic planning paired with our knowledge of logistics, trucking, and customer service led us to build this company. As a potential leader in the trucking industry, we pride ourselves on being a family based business that strives for prompt and personalized service. Every carrier we partner with trusts our ability to transport their items in an efficient and timely manner. Our standards and expectations allow us to provide secure transportation, unmatched customer service, and exponential annual growth.

28.  Based upon this representation of Defendant RED WOLF LOGISTICS, LLC and others, of both an explicit and implicit nature, Plaintiff was reasonably induced into believing that Defendant, as an authorized Motor Property Common Carrier, was capable of performing the automotive transport services Plaintiff sought to be performed, and further, and that Defendant could provide such services in a professional manner so as to not damage Plaintiff's Vehicle in transport.

29.  As a result of these false, misleading, and/or deceptive representations of the Defendant as alleged, Plaintiff has suffered an ascertainable monetary loss.

30.  As an additional result of the actions and/or omissions of the Defendant, Plaintiff has been forced to incur legal fees in connection with recovering the monetary damages it has sustained.

**WHEREFORE**, Plaintiff BWM AUTO SALES, INC. demands judgment against the Defendant RED WOLF LOGISTICS, LLC,  for general, compensatory, and treble damages pursuant to N.J.S.A. 56:8-19, together with punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## COUNT FOUR
### FICTITIOUS INDIVIDUALS AND ENTITIES
### As to Defendants JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10

31.  Plaintiff repeats all of the allegations contained in the Complaint thus far above, and incorporates the same as if fully set forth at length herein.

32.     At all times relevant to this action, Defendants JOHN DOES 1-10 and ABC BUSINESS ENTITIES 1-10, are fictitious names for Defendants and entities whose identities are unknown at present, but who constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private business entities, the identities of which are unknown at present, but who participated in the tortious actions of Defendants described herein, whether by way of their negligent failure to supervise, negligent failure to instruct and counsel, negligent participation in the acts complained of, agents, betters or co-conspirators, and in other ways as yet undetermined.

33.     As a direct and proximate results of the negligence and/or tortious conduct of Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, Plaintiff has been caused to suffer, and in fact did suffer, significant damages.

34.     Plaintiff alleges an insufficient opportunity to determine the identity of all individuals or business entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiff.

35.     As such, Plaintiff specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiff.

**WHEREFORE**, Plaintiff BWM AUTO SALES, INC. demands judgment against the Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, for general, compensatory, and punitive damages, reasonable attorney's fees and costs of suit with interest, and any further relief which the court may deem equitable and just.

## CERTIFICATION PURSUANT TO RULE 1:38-7

I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with <u>R.</u> 1:38-7(b).

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that to the best of my information, knowledge, and belief that the matter in controversy is not the subject of any other actions pending in any other court or other pending arbitration proceedings, that no other action or arbitration is contemplated, and I am not aware of any other person who should be joined in this matter.

## CERTIFICATION OF NOTICE

I certify, pursuant to <u>N.J.S.A.</u> 56:8-20, Plaintiff is mailing a copy of this Complaint to the Office of the Attorney General located at:

**Division of Consumer Affairs**
**Office of the Attorney General**
P.O. Box 45025
Newark, New Jersey 07101

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully Submitted,

**LENTO LAW GROUP, P.C.**

Dated: <u>June 27, 2021</u>                   By: _Joseph D. Lento_
_____
**JOSEPH D. LENTO, ESQUIRE**
**ATTORNEY ID: 013252008**
_Attorney for Plaintiff_

EXHIBIT "B"

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
#### (Camden Vicinage)

| | |
|---|---|
| BMW AUTO SALES, INC., <br><br> Plaintiff, <br><br> v. <br><br> RED WOLF LOGISTICS, LLC; JOHN DOE(S) (1-10); ABC BUSINESS ENTITIES (1-10) (fictitious names), <br><br> Defendant(s)/Third Party Plaintiff(s), <br><br> v. <br><br> JHD TRUCKING, LLC; JOHN DOE(S) (1-10); ABC CORP(S) (1-10) (fictitious names), <br><br> Third Party Defendant(s). | Civil Action No.: 1:21-cv-14647 (JHR) (SAK) |

## CORPORATE DISCLOSURE STATEMENT OF DEFENDANT/THIRD PARTY PLAINTIFF, RED WOLF LOGISTICS, LLC

Pursuant to F.R.C.P. 7.1 of the Federal Rules of Civil Procedure, the undersigned counsel for the defendant/third party plaintiff, Red Wolf Logistics, LLC, hereby makes and sets forth the following disclosure:

    Red Wolf Logistics, LLC is a non-governmental corporate party that exists and is organized under the laws of the State of Texas and is domiciled at 217 N. De Costa St., Fort Worth, Tarrant County, Texas 76111 and it is a privately owned non-stock company that is solely owned by Zachary Arnold.

**CIPRIANI & WERNER, P.C.**

*Marc R. Jones*

MARC R. JONES, ESQUIRE (NJ#016022001)
Attorneys for Defendant – Red Wolf Logistics, LLC
155 Gaither Drive – Suite B
Mount Laurel, NJ 08054
856-761-3800
mjones@c-wlaw.com

DATED:    August 6, 2021



Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
FAX: 512/463-5709

Filing Fee: $300

**Certificate of Formation**
**Limited Liability Company**

Filed in the Office of the
Secretary of State of Texas
Filing #: 803808787 10/26/2020
Document #: 1003883900021
Image Generated Electronically
for Web Filing

### Article 1 - Entity Name and Type

The filing entity being formed is a limited liability company. The name of the entity is:

**Red Wolf Logistics LLC**

### Article 2 – Registered Agent and Registered Office

☑A. The initial registered agent is an organization (cannot be company named above) by the name of:

**United States Corporation Agents, Inc**

OR

☐B. The initial registered agent is an individual resident of the state whose name is set forth below:

C. The business address of the registered agent and the registered office address is:

Street Address:
**9900 Spectrum Dr.   Austin  TX  78717**

#### Consent of Registered Agent

☐A. A copy of the consent of registered agent is attached.

OR

☑B. The consent of the registered agent is maintained by the entity.

### Article 3 - Governing Authority

☐A. The limited liability company is to be managed by managers.

OR

☑B. The limited liability company will not have managers. Management of the company is reserved to the members.
The names and addresses of the governing persons are set forth below:

Managing Member 1: **Zachary    Arnold**          Title: **Managing Member**

Address: **217 N De Costa St   Fort Worth TX, USA 76111**

### Article 4 - Purpose

The purpose for which the company is organized is for the transaction of any and all lawful business for which limited liability companies may be organized under the Texas Business Organizations Code.

Supplemental Provisions / Information

**IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  10-28-2020

Employer Identification Number:
85-3657660

Form:  SS-4

Number of this notice:  CP 575 A

RED WOLF LOGISTICS LLC
ZACHARY ARNOLD SOLE MBR
217 N DE COSTA ST
FORT WORTH, TX  76111

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 85-3657660.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

Based on the information received from you or your representative, you must file
the following form(s) by the date(s) shown.

Form 940                        01/31/2022
Form 944                        01/31/2022

If you have questions about the form(s) or the due date(s) shown, you can call us at
the phone number or write to us at the address shown at the top of this notice.  If you
need help in determining your annual accounting period (tax year), see Publication 538,
*Accounting Periods and Methods*.

We assigned you a tax classification based on information obtained from you or your
representative.  It is not a legal determination of your tax classification, and is not
binding on the IRS.  If you want a legal determination of your tax classification, you may
request a private letter ruling from the IRS under the guidelines in Revenue Procedure
2004-1, 2004-1 I.R.B. 1 (or superseding Revenue Procedure for the year at issue).  Note:
Certain tax classification elections can be requested by filing Form 8832, *Entity
Classification Election*.  See Form 8832 and its instructions for additional information.

If you are required to deposit for employment taxes (Forms 941, 943, 940, 944, 945,
CT-1, or 1042), excise taxes (Form 720), or income taxes (Form 1120), you will receive a
Welcome Package shortly, which includes instructions for making your deposits
electronically through the Electronic Federal Tax Payment System (EFTPS).  A Personal
Identification Number (PIN) for EFTPS will also be sent to you under separate cover.
Please activate the PIN once you receive it, even if you have requested the services of a
tax professional or representative.  For more information about EFTPS, refer to
Publication 966, *Electronic Choices to Pay All Your Federal Taxes*.  If you need to
make a deposit immediately, you will need to make arrangements with your Financial
Institution to complete a wire transfer.



Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Ruth R. Hughs
Secretary of State

## Office of the Secretary of State

October 27, 2020

Attn: Legalzoom.com, Inc.

Legalzoom.com, Inc.
101 N. Brand Blvd, 10th Floor
Glendale, CA 91203 USA

RE: Red Wolf Logistics LLC
File Number: 803808787

It has been our pleasure to file the certificate of formation and issue the enclosed certificate of filing evidencing the existence of the newly created domestic limited liability company (llc).

Unless exempted, the entity formed is subject to state tax laws, including franchise tax laws. Shortly, the Comptroller of Public Accounts will be contacting the entity at its registered office for information that will assist the Comptroller in setting up the franchise tax account for the entity. Information about franchise tax, and contact information for the Comptroller's office, is available on their web site at https://window.state.tx.us/taxinfo/franchise/index.html.

The entity formed does not file annual reports with the Secretary of State. Documents will be filed with the Secretary of State if the entity needs to amend one of the provisions in its certificate of formation. It is important for the entity to continuously maintain a registered agent and office in Texas. Failure to maintain an agent or office or file a change to the information in Texas may result in the involuntary termination of the entity.

If we can be of further service at any time, please let us know.

Sincerely,

Corporations Section
Business & Public Filings Division
(512) 463-5555

Enclosure

EXHIBIT "C"

PROGRESSIVE
PO BOX 94739
CLEVELAND, OH 44101



Named insured

**Policy number: 02944872-0**
Underwritten by:
Progressive County Mutual Ins Co
February 23, 2021
Policy Period: Dec 1, 2020 - Dec 1, 2021
Page 1 of 3

RED WOLF LOGISTICS LLC
217 N DE COSTA ST
FORT WORTH, TX 76111

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, print
policy documents, or check the status of a
claim.

**1-800-444-4487**
For customer service and claims service,
24 hours a day, 7 days a week.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page
## Your coverage has changed

Your coverage began the later of December 1, 2020 at 12:01 a.m. or at the time your application is executed on the first day of the
policy period.  This policy period ends on December 1, 2021 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your
coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the
policy contract allows the stacking of limits. The policy contract is form 6912 (06/10). The contract is modified by forms 2852TX
(02/07), Z434 (08/11), MCS90 (99/99), 1198 (01/04), Z5291TX (03/07), Z528TX (03/07), 4852TX (03/07), 4881TX (09/14) and Z228
(01/11).

The named insured organization type is a corporation.

## Motor Vehicle Crime Prevention Authority Fee

Your payment includes a $4.00 fee per vehicle each year. This fee helps fund:

- auto burglary, theft and fraud prevention;
- criminal justice efforts; and
- trauma care and emergency medical services for victims of accidents due to traffic offenses.

By law, we send this fee to the Motor Vehicle Crime Prevention Authority (MVCPA).

## Policy changes effective February 22, 2021

Premium change:

Changes:                                   The auto coverage schedule has changed.

The changes shown above will not be effective prior to the time the changes were requested.


Continued

Form 6489 TX (01/70)

Policy number: 02944872-0
RED WOLF LOGISTICS LLC
Page 2 of 3

## Outline of coverage

### Auto coverage part

| Description | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others | | | $15,781 |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured/Underinsured Motorist | $50,000 each person/$100,000 each accident | | |
| Uninsured Motorist Property Damage | $100,000 each accident | $250 | |
| Personal Injury Protection | Rejected | | |
| Comprehensive | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Collision | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| **Subtotal policy premium** | | | |

### Motor Truck Cargo coverage part

| Description | Limits | Deductible | |
|---|---|---|---|
| Motor Truck Cargo | $100,000 | $2,500 | |
| **Subtotal policy premium** | | | |
| Motor Vehicle Crime Prevention Authority Fee | | | |
| Fees | | | |
| **Total 12 month policy premium and fees** | | | |

## Rated driver

1. ZACHARY ARNOLD

## Rated commodities

1. OTHER BUILDING SUPPLIES

## Auto coverage schedule

1. **2015 Ford F350**     Actual Cash Value   (plus $2,000.00 Permanently Attached Equip)
   VIN:   1FT8W3B67FEA24022      Garaging Zip Code: 76111      Radius: 500

| | Liability | UM/UIM BI | UM PD | | | |
|---|---|---|---|---|---|---|
| **Liability Premium** | | | | | | |

| | Comp Deductible | Comp Premium | Collision Deductible | Collision Premium | | Auto Total |
|---|---|---|---|---|---|---|
| **Physical Damage Premium** | $1,000 | | $1,000 | | | |

## Loss Payee information

1. Loss Payee      Auto 1      LOBEL FINANCIAL INC
217 N DE COSTA ST FORT WORTH, TX 76111
2015 Ford F350 (1FT8W3B67FEA24022)

Continued

Form 6489 TX (01/20)

Policy number: 02944872-0
RED WOLF LOGISTICS LLC
Page 3 of 3

**Additional Insured information**

1.  Additional Insured      DAT SOLUTIONS
                8405 SW NIMBUS BEAVERTON, OR 97008

Form 6489 TX (01/20)

Exhibit "D"

Bill of Lading

## PRIME INT'L SHIPPING LLC

| VEHICLES | | | | |
|---|---|---|---|---|
| Customer | Description | Vin number | Title | Key |
| MTL | 2020 FOAD EXPLORER BLACK | 1FM5K8GC1LGA91088 | NO | 1 |
| | | | | |
| | | | | |

### CONDITION ILLUSTRATED BY LETTER CODE

A - Broken   D - Dented   G - Gouged   K - Cracked   N - Painted over   R - Punctured   W - Wavy
B - Bent   E - Defective   H - Stained   L - Loose   P - Paint defect   S - Scratched   X - Present
C - Chipped   F - Scuffed   J - Cut   M - Missing   O - Hail damage   T - Torn   Z - Other

**REMARKS**

WINSHIELD  DAMAGED
HOOD  DAMAGE

*Receiving agent must have driver sign here acknowledging damages.*

Transportation company name: JH & D

Driver's Name: Cleppold Hultbrand

Phone: 315-380-6713

Signature: Cleppold Hultbrand          Date: 05-14-2021

9100 Galveston Rd Ste 5, Houston, TX 77034 – Tel: (832) 500-7007 – Fax: (832)905-9620
E-mail: inventory@primeshippingllc.com – Web: www.primeshippingllc.com

EXHIBIT "E"

## Chadsworth A Sakala

| | |
|---|---|
| **From:** | Chadsworth A Sakala |
| **Sent:** | Sunday, July 25, 2021 6:18 PM |
| **To:** | JDLENTO@LENTOLAWGROUP.COM |
| **Subject:** | BMW Auto Sales, Inc. vs. Red Wolf Logistics, LLC, et. al // Progressive County Mutual Insurance Company Claim # 21-9434510 |
| **Attachments:** | 21-9434510_Complaint_Erroneous_Red Wolf Logistics_NJ.pdf; 21-9434510_Bill of Lading_Correct Transportation Carrier.pdf |

Mr. Lento:

My name is Chad Sakala, and the aforementioned claim (concerning your attached lawsuit) has been transferred to me for further handling.  After further review, it appears our insured, Red Wolf Logistics, LLC, has come to be involved with your lawsuit by way of identity theft.

In short, there is no coverage for this allegation, as the property was solely handled by a different, unrelated carrier, and our named insured was not involved in any way.  Please see the attached Bill of Lading concerning your transport in question, which documents the party you should be seeking restitution from as follows:

**CORRECT CARRIER –**
DOT # 2587455
MC908999
J H D TRUCKING LLC
20 TERRACE DRIVE
LA
MONROE
71202
P: 318-503-2886
M: 318-512-0694
F:
REP1: JAMES H DAVIS
REP2:
-----------------------------------------------

**CORRECT INSURANCE -**
WILSHIRE INSURANCE COMPANY
POLICY # BA0717974
INCEPTED 03/13/2017
$0 - $750,000
ATTN: DAVID MATOUSEK
ADDRESS: 1206 WEST AVENJE J., STE: 100
LANCASTER, CA US 93534
FILE A CLAIM USING THE FOLLOWING:
TELEPHONE: (800) 252 - 0281 243
FAX: (661) 940 - 7105
-----------------------------------
**CORRECT DRIVER –**
CLIFFORD HUBBARD
318-380-6713

1

3351 HIGHWAY 594 APT 20
LAKESHORE, LA 71203-8476(PROPERTY TYPE - RESIDENTIAL)

I have further evidence of other instances of identity theft being perpetrated on our insured via other transportation companies.  However, I am hoping you will be agreeable to amending your complaint, incorporating the correct defendant information above, and without our named insured Red Wolf Logistics LLC included in the lawsuit.

Please confirm if you are willing remediate the existing suit unilaterally.  If you are not, please let me know immediately so I can retain counsel to initiate the proper proceedings to remove our insured from this matter.

I look forward to hearing from you.  Thank you.

Regards,

Chadsworth Sakala
Progressive Group of Insurance Companies
747 Alpha Drive
Highland Heights, OH 44143
Phone: 440-910-3006
Fax: 833-905-1738 (Documents With A Relevant Claim Number Listed)
Email: csakala1@progressive.com

*****************************************************
*****************************************************

All correspondence (including any e-mail) we receive from you may become part of your permanent claims file.  If you request a reply to this e-mail, we may respond by e-mail or by phone.

**PLEASE NOTE: Any time-sensitive requests including, but not limited to, demands, are not accepted via email and must be sent via facsimile or mail.**

The contents of this email are confidential and may be legally privileged, intended solely for the addressee.  If you are not the intended recipient, be advised that any use, dissmenation, distribution, storage (inciuiding electronic) or copying of this email, is strictly prohibited.  If you receive this email in error, please notify the sender immediately by reply email and destroy the message and its attachments.

Arizona law requires the following statement to appear on this form for your protection -- "Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties."

PROGRESSIVE CLAIMS
747 ALPHA DRIVE
HIGHLAND HEIGHTS, OH 44143



**Underwritten By:**
**Progressive County Mutual Insurance**
**Company**

Claim Number:   21-9434510
Loss Date:       May 14, 2021
Document Date: June 29, 2021
Page 1  of 1

BMW AUTO SALES
2816 OGLETOWN RD
NEWARK, DE 19713

**claims.progressive.com**
  Track the status and details of your claim,
  e-mail your representative or report a
  new claim.

# Claim Information

I have completed the investigation for your cargo claim resulting from an incident on or around May 14, 2021 and closed the file under a conditional denial.

Based on the available facts, no evidence has been provided to date to support the damage occurred while in the care, custody or control of the insured. As a result, we will be unable to make any payment to you at this time.

If you have any questions, please let me know.

Thank you.

TOMAS VILLASANO
Claims Department
1-956-429-3961
1-800-PROGRESSIVE (1-800-776-4737)
Fax: 1-833-905-1738
Form Z587 XX (01/08) TX

Chase Online





Monday, July 19, 2021

# Note to Payee

AUCTION DIRECT TRANSPORT, LLC
sent you a payment using the Chase.com online service.

Please review these details:

**Payment amount:**   $500.00

**Payment sent to account:**   3526663 - FOR ORDER ID BELOW

**Payment sent by Chase on:**   07/08/2021

**Expected arrival date**   07/15/2021

---

# Proof of Payment

## Customer Information

| | |
|---|---|
| Customer name | AUCTION DIRECT TRANSPORT, LLC |
| Address (line 1) | 943 S GILBERT RD STE 103 |
| Address (line 2) | |
| City | MESA |
| State | AZ |
| ZIP code | 85204 |

## Transaction Information

| | |
|---|---|
| Send on date | 07/08/2021 |

Expected arrival date                                                07/15/2021

Check number                                                         723706304



| CHASE | Apply to Acct 3526663 – FOR ORDER ID BELOW | 723706304 |
|---|---|---|

CHASE ONLINE BILL PAYMENT
PO BOX 15944
WILMINGTON DE 19850-5944
(800) 472-5236

AUCTION DIRECT TRANSPORT, LLC
943 S GILBERT RD STE 103
MESA AZ 85204-4441

25-3/440
07-08-2021

Pay   FIVE HUNDRED AND 00/100                                        Dollars

**$500.00**

To
the
Order
of

05879 BPC 001 011 21189 - 723706304 1 OF 1
RED WOLF LOGISTICS LLC
848 W MITCHELL ST APT 269A
ARLINGTON TX 76013-2581

Check Void After 90 Days

_Kent Smith_

JPMorgan Chase Bank, N.A. Columbus, Ohio

⑈723706304⑈ ⑆044000037⑆ 658533013⑈

For Deposit Only - JPMC

*FEDERAL RESERVE BOARD OF GOVERNORS SEG. CC.

ENDORSE HERE
for Electronic Deposit
at Chase Bank

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTIONAL USE*

This proof of payment is evidence that the customer has initiated the payment described above © 2021 JPMorgan Chase
& Co.





Monday, July 19, 2021

# Note to Payee

AUCTION DIRECT TRANSPORT, LLC
sent you a payment using the Chase.com online service.

Please review these details:

**Payment amount:**   $500.00

**Payment sent to account:**   3526663 - FOR ORDER ID BELOW

**Payment sent by Chase on:**   07/09/2021

**Expected arrival date**   07/16/2021

----------------------------------------------------------------------

# Proof of Payment

## Customer Information

| | |
|---|---|
| Customer name | AUCTION DIRECT TRANSPORT, LLC |
| Address (line 1) | 943 S GILBERT RD STE 103 |
| Address (line 2) | |
| City | MESA |
| State | AZ |
| ZIP code | 85204 |

## Transaction Information

| | |
|---|---|
| Send on date | 07/09/2021 |

7/19/2021                                                    Chase Online

**Expected arrival date**                                                   07/16/2021

**Check number**                                                            723751921

---

CHASE ◯
CHASE ONLINE BILL PAYMENT
PO BOX 15944
WILMINGTON DE 19850-5944
(800) 472-6236

Apply to Acct 3526663 - FOR ORDER ID BELOW
AUCTION DIRECT TRANSPORT, LLC
943 S GILBERT RD STE 103
MESA AZ 85204-4441

52436 revenue

723751921
25-3/440
07-09-2021

Pay   FIVE HUNDRED AND 00/100                                         Dollars

                                                                   $500.00

To
the
Order
of

07780 BPC 001 011 21190 - 723751921 1 OF 1
RED WOLF LOGISTICS LLC
848 W MITCHELL ST APT 269A
ARLINGTON TX 76013-2581

Check Void After 90 Days

*Kent Smith*

JPMorgan Chase Bank, N.A. Columbus, Ohio

⑂723751921⑂ ⑈044000037⑈       658533013⑈

For Deposit Only - JPMC

ENDORSE HERE
x
For Electronic Deposit
at Chase bank
RWL V Lopez

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

This proof of payment is evidence that the customer has initiated the payment described above © 2021 JPMorgan Chase & Co.

Chase Online

7/19/2021





Monday, July 19, 2021

# Note to Payee

AUCTION DIRECT TRANSPORT, LLC
sent you a payment using the <u>Chase.com</u> online service.

Please review these details:

**Payment amount:**   $200.00

**Payment sent to account:**   3526663 - FOR ORDER ID BELOW

**Payment sent by Chase on:**   07/07/2021

**Expected arrival date**   07/14/2021

----------------------------------------------------------------------------------------------------

# Proof of Payment

## Customer Information

| | |
|---|---|
| Customer name | AUCTION DIRECT TRANSPORT, LLC |
| Address (line 1) | 943 S GILBERT RD STE 103 |
| Address (line 2) | |
| City | MESA |
| State | AZ |
| ZIP code | 85204 |

## Transaction Information

| | |
|---|---|
| Send on date | 07/07/2021 |

7/19/2021                                Chase Online

Expected arrival date                                                         07/14/2021

Check number                                                                  723496146

---

**CHASE** ⬡
CHASE ONLINE BILL PAYMENT
PO BOX 15944
WILMINGTON DE 19850-5944
(800) 472-6236

Apply to Acct **3526663 - FOR ORDER ID BELOW**
AUCTION DIRECT TRANSPORT, LLC
943 S GILBERT RD STE 103
MESA AZ 85204-4441

83071

**723496146**
25-3/440
**07-07-2021**

Pay   TWO HUNDRED AND 00/100                                          Dollars

$200.00

To
the
Order
of

35740 BPC 001 011 21188 - 723496146 2 OF 2
RED WOLF LOGISTICS LLC
848 W MITCHELL ST APT 269A
ARLINGTON TX 76013-2581

Check Void After 90 Days

*Kent Smith*

JPMorgan Chase Bank, N.A. Columbus, Ohio

⑈723496146⑈ ⑆044000037⑆   658533013⑈

For Deposit Only - JPMC

For Electronic Deposit
at Chase Bank

x *Ralph V Cooper*

---

This proof of payment is evidence that the customer has initiated the payment described above © 2021 JPMorgan Chase & Co.

7/19/2021                                                                     Chase Online





Monday, July 19, 2021

# Note to Payee

AUCTION DIRECT TRANSPORT, LLC
sent you a payment using the Chase.com online service.

Please review these details:

**Payment amount:**   $350.00

**Payment sent to account:**   3526663 - FOR ORDER ID BELOW

**Payment sent by Chase on:**   07/07/2021

**Expected arrival date**   07/14/2021

-------------------------------------------------------------------------------

# Proof of Payment

## Customer Information

| | |
|---|---|
| Customer name | AUCTION DIRECT TRANSPORT, LLC |
| Address (line 1) | 943 S GILBERT RD STE 103 |
| Address (line 2) | |
| City | MESA |
| State | AZ |
| ZIP code | 85204 |

## Transaction Information

| | |
|---|---|
| Send on date | 07/07/2021 |

7/19/2021                                   Chase Online

Expected arrival date                                              07/14/2021

Check number                                                      723496006

---

**CHASE** 

CHASE ONLINE BILL PAYMENT
PO BOX 15944
WILMINGTON DE 19850-5944
(800) 472-6236

Apply to Acct **3526663 - FOR ORDER ID BELOW**
AUCTION DIRECT TRANSPORT, LLC
943 S GILBERT RD STE 103
MESA  AZ 85204-4441

83181

723496006
25-3/440
**07-07-2021**



Pay  THREE HUNDRED FIFTY AND 00/100                                Dollars

                                                                  $350.00

To
the
Order
of

35740 BPC 001 011 21188 - 723496006 1 OF 2
RED WOLF LOGISTICS LLC
848 W MITCHELL ST APT 269A
ARLINGTON  TX 76013-2581

Check Void After 90 Days

*Kent Smith*

JPMorgan Chase Bank, N.A. Columbus, Ohio

⑈723496006⑈ ⑆044000037⑈      658533013⑈

---

For Deposit Only - JPMC



---

This proof of payment is evidence that the customer has initiated the payment described above © 2021 JPMorgan Chase
& Co.

EXHIBIT "F"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Camden Vicinage)**

| | |
|---|---|
| BMW AUTO SALES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>RED WOLF LOGISTICS, LLC; JOHN DOE(S) (1-10); ABC BUSINESS ENTITIES (1-10) (fictitious names),<br><br>Defendant(s)/Third Party Plaintiff(s),<br><br>v.<br><br>JHD TRUCKING, LLC; JOHN DOE(S) (1-10); ABC CORP(S) (1-10) (fictitious names),<br><br>Third Party Defendant(s). | Civil Action No.: 1:21-cv-14647 (JHR) (SAK) |

## ANSWER, DEFENSES, AND THIRD PARTY COMPLAINT, OF DEFENDANT, RED WOLF LOGISTICS, LLC, TO PLAINTIFF'S COMPLAINT

Defendant, Red Wolf Logistics, LLC (hereinafter referred to as "Defendant" or "Red Wolf"), by way of Answer to the plaintiff's, BMW Auto Sales, Inc. ("Plaintiff"), Complaint hereby responds and says:

### PARTIS, JURISDICTION & VENUE

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

2.      Admitted.

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

4.      Denied.

## GENERAL ALLEGATIONS

5.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

6.      Admitted.

7.      Denied.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

9.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

10.      Denied.

11.      Denied.

## COUNT ONE
## PROFESSIONAL NEGLIGENCE
### As to Defendant Red Wolf Logistics, LLC

12.      Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of the Complaint as if set forth at length herein

13.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

14.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

15.      Denied.

16.      Denied.

17.     Denied.

18.     Denied.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with

prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff

for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

**COUNT TWO**
**BREACH OF CONTRACT**
**As to Defendant Red Wolf Logistics, LLC**

19.     Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of

the Complaint as if set forth at length herein.

20.     Denied.

21.     Defendant is without knowledge or information sufficient to form a belief as to the truth

of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof

is demanded at the time of trial.

22.     Denied.

23.     Denied.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with

prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff

for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

**COUNT THREE**
**CONSUMER FRAUD**
**As to Defendant Red Wolf Logistics, LLC**

24.     Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of

the Complaint as if set forth at length herein.

25.     Defendant is without knowledge or information sufficient to form a belief as to the truth

of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof

is demanded at the time of trial.

26.     Denied.

27.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

28.    Denied.

29.    Denied.

30.    Denied.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

## COUNT FOUR
### FICTITIOUS INDIVIDUALS AND ENTITIES
### As to Defendant JOHN DOE(S) (1-10) and ABC ENTITIES (1-10)

31.    Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of the Complaint as if set forth at length herein.

32.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

33.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

34.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

35.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

## SEPARATE DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted, and Defendant reserves the right to move to dismiss.

2.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of laches.

3.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of waiver.

4.      Plaintiff has not joined all parties necessary for the adjudication of this action, and Defendant reserves the right to move to dismiss.

5.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of accord and satisfaction.

6.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of estoppel.

7.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of unclean hands.

8.      Defendant was not negligent.

9.      Plaintiff's claims are barred in whole or in party by the Economic Loss Doctrine.

10.      Defendant performed each and every duty owed to the Plaintiff, if any.

11.      Recovery is barred or precluded by Plaintiff's own negligence.

12.      Plaintiff's claims are barred, limited or diminished and reduced by the doctrine of comparative negligence under the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1 *et seq.*

13.      Plaintiff's claims are barred, limited  or diminished and reduced by New Jersey's Joint Tortfeasor Contribution Act, N.J.S.A. 2A:53A-1, *et seq.*

14.     Plaintiffs' claims are barred, limited or diminished and reduced by Plaintiff's failure to adhere to the strict notice requirements as set forth in the "Carmack Amendment", 49 U.S.C. §14706, *et seq.*

15.     Defendant's claim and are entitled to assert any and all defenses available pursuant to any and all federal statutes and regulations, including, but not limited to, the "Carmack Amendment" as set forth at 49 U.S.C. §14706, *et seq.*

16.     Defendant denies proximate cause.

17.     Defendant denies any claim for strict liability, if any.

18.     Defendant denies any claim for compensatory and/or punitive damages.

19.     Defendant denies any and all claims for breach of contract.

20.     Defendant denies any and all claims for Consumer Fraud and is entitled to assert any and all defenses available pursuant to any and all federal and state statutes and regulations, including, but not limited to, those as set forth in the Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq.*

21.     Plaintiff's claims are barred in whole, or in part, by the applicable statute of limitations.

22.     Any and all damages alleged to have been suffered by the Plaintiff were caused solely by the negligence of independent third parties over whom this Defendant exerted no control.

23.     Recovery is barred, precluded or diminished by Plaintiff's failure to mitigate damages.

24.     This case is barred, in whole or in part, by the doctrine of avoidable consequences.

25.     This case is barred, in whole or in part, by the entire controversy doctrine.

26.     This case is barred, in whole or in part, by the doctrine of *res judicata.*

27.     This case is barred, in whole or in part, by the doctrine of joint enterprise.

28.     This case is barred, in whole or in part, because Plaintiff lacks standing.

29.     This case is barred, in whole or in part, because the dispute is moot.

30.     This case is barred, in whole or in part, by lack of jurisdiction.

31.     The Summons, or service thereof, is defective and Defendant reserves the right to move to quash service of process of dismiss the Complaint.

32.     This case is barred because of Plaintiff's failure to join an indispensable party without whom this action cannot proceed.

33.     This action is barred because of insufficiency of process.

34.     Plaintiffs' claims are barred in whole, or in part, by any and all applicable federal and state statutes and regulations pertaining to interstate commerce, trucking and cargo claims.

35.     Platiniff, or plaintiff's authorized agent, signed a condition report and accepted the cargo "as is," and plaintiff is therefore barred from recovery.

36.     The cargo was already in damaged condition at the time it was picked up by the answering defendant.

37.     The cargo was already depreciated in value by virtue of the fact that it was rendered a total loss due to salt water flood damage.

38.     Plaintiff's claim is barred in whole, or in part, by <u>F.R.C.P.</u> 11 (b), and, as presented, is frivolous, improper, intended to harass, is unwarranted, baseless and is lacking in evidentiary support, and as a result, Defendant is entitled to sanctions.

## THIRD PARTY COMPLAINT

Defendant/Third Party Plaintiff, Red Wolf Logistics, LLC, by way of third party complaint, hereby says:

### FIRST COUNT
### Contribution

1.      Third Party Defendant, JHD Trucking, Inc. is, upon information and belief, a corporation organized and existing under the laws of the State of Louisiana with its principal place of business located at 20 Terrace Drive, Monore, Louisiana 71202.

2.      Third Party Defendant, JHD Trucking, Inc., was the actual entity that transported and delivered the 2020 Ford Explorer to Plaintiff in this case as shown by the Bill of Lading.

3.      There is factual information that indicates that JHD Trucking, Inc. was improperly using Red Wolf Logistic's corporate identity for purposes of making deliveries and they were the actual party that handled the alleged delivery of the Vehicle.

4.      Red Wolf Logistics, LLC denies any liability whatsoever, but they nonetheless assert that any and all injuries and damages sustained by Plaintiff are the proximate result of the negligence of other parties known or unknown, including, but not limited to the third party defendant(s), JHD Trucking, LLC, and Red Wolf hereby demands contribution pursuant to New Jersey's Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1, *et seq.*;  and Comparative Negligence Act, N.J.S.A. 2A:15-5.1 *et seq.*, from the third party defendant(s) for their proportionate share of any and all sums that may be adjudged against Red Wolf in this action.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

## SECOND COUNT
### Indemnification

5.      Red Wolf  hereby incorporates its allegations to the preceding paragraphs of the cross claim as if fully set forth at length herein.

6.      Although Red Wolf denies any liability whatsoever, they nonetheless assert that any and all injuries and damages sustained by the Plaintiff is the proximate result of the negligence of other parties known or unknown, including, but not limited to the third party defendant, JHD Logistics, LLC, whose negligence/liability was primary and active, and if Red Wolf is found liable to Plaintiff with respect to said injuries and damages, such liability resulted solely from secondary, imputed, vicarious or passive negligence, and third party defendants aforesaid are liable to Red Wolf by way of common law indemnification, for any and all sums that Red Wolf may be required to pay in this action.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

## THIRD COUNT
### Liability Under the Carmack Amendment

7.      Red Wolf  hereby incorporates its allegations to the preceding paragraphs of the cross claim as if fully set forth at length herein.

8.      The Third Party Defendant, JHD Logistics, LLC, had a duty to deliver the cargo in the same condition as it was in when it was received by them.

9.      Due to the negligence and/or legally culpable conduct and/or omissions of the Third Party Defendant(s), or other parties, the cargo was damaged during delivery.

10.     Third Party Defendant(s) were aware that that they were responsible for the safe handling of the cargo during transit.

11.     Third Party Defendant(s) are liable to Red Wolf for any and all alleged damages under the Carmack Amendment(s), 49 U.S.C. §14706, *et seq.*

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

## ANSWER TO ALL CROSSCLAIMS

Red Wolf, by way of answer to any and all cross claims, hereby says:

1.      Red Wolf denies each and every allegation contained in any cross claims filed or to be filed, and therefore the cross claimants are left to their proofs.

## DEMAND FOR JURY TRIAL

Defendant, Red Wolf, hereby demands a trial by jury as to all issues.

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other pending action.  I know of no other parties to be joined at this time other than those named herein.

I am aware that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

*Marc R. Jones*

_____

MARC R. JONES, ESQUIRE (NJ#016022001)
Attorneys for Defendants – Red Wolf Logistics, LLC
155 Gaither Drive – Suite B
Mount Laurel, NJ 08054
856-761-3800
mjones@c-wlaw.com

DATED:      August 6, 2021

JS 44 (Rev. 12/07, NJ 5/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

BMW Auto Sales, Inc.

**(b)** County of Residence of First Listed Plaintiff   Atlantic County, NJ

**(c)** Attorney's (Firm Name, Address, Telephone Number and Email Address)

Joseph D. Lento, Esquire - Lento Law Group
3000 Atrium Way- Suite 200 - Mount Laurel, NJ 08054
T: 856-652-2000
jdlento@lentolawgroup.com

## DEFENDANTS

Red Wolf Logistics, LLC

County of Residence of First Listed Defendant   Tarrant County, TX

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

Marc R. Jones, Esquire
Cipriani & Werner, P.C.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
        Plaintiff

☒ 3  Federal Question
        (U.S. Government Not a Party)

☐ 2  U.S. Government
        Defendant

☐ 4  Diversity
        (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1  Original
        Proceeding

☒ 2  Removed from
        State Court

☐ 3  Remanded from
        Appellate Court

☐ 4  Reinstated or
        Reopened

☐ 5  Transferred from
        another district
        (specify)

☐ 6  Multidistrict
        Litigation

☐ 7  Appeal to District
        Judge from
        Magistrate
        Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332 (d); 28 U.S.C. 1446 (d)

Brief description of cause:
Carmack Amendment, 49 U.S.C. 11706; 48 U.S.C. 14706 - Property Damage

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S)

(See instructions):

JUDGE   Honorable James McClaim, J.S.C.

DOCKET NUMBER   ATL-DC-3454-21

Explanation:   Subject Matter Jurisdiction Removal - Carmack Amendment

DATE

08/05/2021

SIGNATURE OF ATTORNEY OF RECORD

/s/ Marc R. Jones

JS 44 Reverse (Rev. 12/07, NJ 1/08)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.      **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.      **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**      Example:     U.S. Civil Statute: <u>47 USC 553</u>
Brief Description: <u>Unauthorized reception of cable service</u>

VII.    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases. Provide a brief explanation of why the cases are related.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

EXHIBIT "G"

**Marc Jones**

| | |
|---|---|
| **From:** | James Davis <jamesdavis197242@gmail.com> |
| **Sent:** | Friday, August 13, 2021 1:52 PM |
| **To:** | Marc Jones |

To whom it may concern. I am James H Davis owner/operator of JHD TRUCKING LLC of 20 Terrace Dr Monroe, Louisiana. DoT #2587455 mc# 908999-c. I only haul wood products and only operate within a 300 mile radius. In my six years of operation I've never been on the east, west, or north coast. I only operate in Texas, Louisiana, Mississippi, and Arkansas. I've been named a third party defendant in a law suit and I assure you it is a case of mistaken identity . I'm very sorry for the mixup. I appreciate any assistance you can provide in clearing up this matter. Thank you.

EXHIBIT "H"

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Camden Vicinage)**

| | |
|---|---|
| BMW AUTO SALES, INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 1:21-cv-14647 (JHR) (SAK) |
| RED WOLF LOGISTICS, LLC; JOHN DOE(S) (1-10); ABC BUSINESS ENTITIES (1-10) (fictitious names), | |
| Defendant(s)/Third Party Plaintiff(s), | |
| v. | |
| JHD TRUCKING, LLC; JOHN DOE(S) (1-10); ABC CORP(S) (1-10) (fictitious names), | |
| Third Party Defendant(s). | |

## STIPULATION OF DISMISSAL WITHOUT PREJUDICE AS TO THIRD PARTY DEFENDANT, JHD TRUCKING, LLC *ONLY*

**THIS MATTER** in difference in the above captioned matter between the third party plaintiff, Red Wolf Logistics, LLC ("Red Wolf"), and the third party defendant, JHD Trucking, LLC ("Third Party Defendant" or "JHD"), it is hereby STIPULATED and AGREED that the Third Party Plaintiff's, Red Wolf, Third Party Complaint is hereby dismissed WITHOUT PREJUDICE as to the Third Party Defendant, JHD Trucking, LLC, ONLY at this time as this Third Party Defendant was mistakenly included in this litigation; however, should discovery permit the re-filing of Third Party Plaintiff's claims as against JHD Trucking, LLC that same shall not be barred by any applicable Statute of Limitations, N.J.S.A. 2A:14-1, *et seq.* and/or the "entire controversy" doctrine as same are tolled by the filing of the within litigation.

CIPRIANI & WERNER, P.C.

MARC R. JONES, ESQUIRE
Attorneys for Defendant – CS Trailer Rental,
LLC


DATED:          August 13, 2021

EXHIBIT "I"

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### (Camden Vicinage)

| | |
|---|---|
| BMW AUTO SALES, INC., | |
| Plaintiff, | |
| v. | Civil Action No.: 1:21-cv-14647 (JHR) (SAK) |
| RED WOLF LOGISTICS, LLC; JOHN DOE(S) (1-10); ABC BUSINESS ENTITIES (1-10) (fictitious names), | |
| Defendant(s)/Third Party Plaintiff(s), | |
| v. | |
| JHD LOGISTICS, LLC; EXCELLENCE LIFESTYLE, LLC; RYION COOLEY; QUINTAE CONQUERS; CLIFFORD HUBBARD; JOHN DOE(S) (1-10); ABC CORP(S) (1-10) (fictitious names), | |
| Third Party Defendant(s). | |

### FIRST AMENDED ANSWER, DEFENSES, AND THIRD PARTY COMPLAINT, OF DEFENDANT, RED WOLF LOGISTICS, LLC, TO PLAINTIFF'S COMPLAINT

Defendant, Red Wolf Logistics, LLC (hereinafter referred to as "Defendant" or "Red Wolf"), by way of First Amended Answer to the plaintiff's, BMW Auto Sales, Inc. ("Plaintiff"), Complaint hereby responds and says:

### PARTIS, JURISDICTION & VENUE

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

2.      Admitted.

3.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

4.      Denied.

## GENERAL ALLEGATIONS

5.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

6.      Admitted.

7.      Denied.

8.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

9.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

10.     Denied.

11.     Denied.

## COUNT ONE
## PROFESSIONAL NEGLIGENCE
### As to Defendant Red Wolf Logistics, LLC

12.     Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of the Complaint as if set forth at length herein

13.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

14.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

15.     Denied.

16.    Denied.

17.    Denied.

18.    Denied.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

**COUNT TWO**
**BREACH OF CONTRACT**
**As to Defendant Red Wolf Logistics, LLC**

19.    Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of the Complaint as if set forth at length herein.

20.    Denied.

21.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

22.    Denied.

23.    Denied.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

**COUNT THREE**
**CONSUMER FRAUD**
**As to Defendant Red Wolf Logistics, LLC**

24.    Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of the Complaint as if set forth at length herein.

25.    Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

3

26.     Denied.

27.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

28.     Denied.

29.     Denied.

30.     Denied.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

<u>**COUNT FOUR**</u>
**FICTITIOUS INDIVIDUALS AND ENTITIES**
**As to Defendant JOHN DOE(S) (1-10) and ABC ENTITIES (1-10)**

31.     Defendant, Red Wolf, hereby incorporates its answers to the proceeding paragraphs of the Complaint as if set forth at length herein.

32.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

34.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

35.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, and the same are accordingly denied and strict proof thereof is demanded at the time of trial.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

<u>**SEPARATE DEFENSES**</u>

1.      The Complaint fails to state a claim upon which relief can be granted, and Defendant reserves the right to move to dismiss.

2.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of laches.

3.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of waiver.

4.      Plaintiff has not joined all parties necessary for the adjudication of this action, and Defendant reserves the right to move to dismiss.

5.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of accord and satisfaction.

6.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of estoppel.

7.      Plaintiff's claims as against Defendant, as referenced in the Complaint, are barred in whole or in part, by the doctrine of unclean hands.

8.      Defendant was not negligent.

9.      Plaintiff's claims are barred in whole or in party by the Economic Loss Doctrine.

10.     Defendant performed each and every duty owed to the Plaintiff, if any.

11.     Recovery is barred or precluded by Plaintiff's own negligence.

12.     Plaintiff's claims are barred, limited or diminished and reduced by the doctrine of comparative negligence under the New Jersey Comparative Negligence Act, <u>N.J.S.A.</u> 2A:15-5.1 *et seq.*

13.     Plaintiff's claims are barred, limited  or diminished and reduced by New Jersey's Joint Tortfeasor Contribution Act, <u>N.J.S.A.</u> 2A:53A-1, *et seq.*

14.     Plaintiffs' claims are barred, limited or diminished and reduced by Plaintiff's failure to adhere to the strict notice requirements as set forth in the "Carmack Amendment", 49 U.S.C. §14706, *et seq.*

15.     Defendant's claim and are entitled to assert any and all defenses available pursuant to any and all federal statutes and regulations, including, but not limited to, the "Carmack Amendment" as set forth at 49 U.S.C. §14706, *et seq.*

16.     Defendant denies proximate cause.

17.     Defendant denies any claim for strict liability, if any.

18.     Defendant denies any claim for compensatory and/or punitive damages.

19.     Defendant denies any and all claims for breach of contract.

20.     Defendant denies any and all claims for Consumer Fraud and is entitled to assert any and all defenses available pursuant to any and all federal and state statutes and regulations, including, but not limited to, those as set forth in the Consumer Fraud Act, <u>N.J.S.A.</u> 56:8-2, *et seq.*

21.     Plaintiff's claims are barred in whole, or in part, by the applicable statute of limitations.

22.     Any and all  damages alleged to have been suffered by the Plaintiff were caused solely by the negligence of independent third parties over whom this Defendant exerted no control.

23.     Recovery is barred, precluded or diminished by Plaintiff's failure to mitigate damages.

24.     This case is barred, in whole or in part, by the doctrine of avoidable consequences.

25.     This case is barred, in whole or in part, by the entire controversy doctrine.

26.     This case is barred, in whole or in part, by the doctrine of *res judicata.*

27.     This case is barred, in whole or in part, by the doctrine of joint enterprise.

28.     This case is barred, in whole or in part, because Plaintiff lacks standing.

29.     This case is barred, in whole or in part, because the dispute is moot.

30.     This case is barred, in whole or in part, by lack of jurisdiction.

31.     The Summons, or service thereof, is defective and Defendant reserves the right to move to quash service of process of dismiss the Complaint.

32.    This case is barred because of Plaintiff's failure to join an indispensable party without whom this action cannot proceed.

33.    This action is barred because of insufficiency of process.

34.    Plaintiffs' claims are barred in whole, or in part, by any and all applicable federal and state statutes and regulations pertaining to interstate commerce, trucking and cargo claims.

35.    Platiniff, or plaintiff's authorized agent, signed a condition report and accepted the cargo "as is," and plaintiff is therefore barred from recovery.

36.    The cargo was already in damaged condition at the time it was picked up by the answering defendant.

37.    The cargo was already depreciated in value by virtue of the fact that it was rendered a total loss due to salt water flood damage.

38.    Plaintiff's claim is barred in whole, or in part, by F.R.C.P. 11 (b), and, as presented, is frivolous, improper, intended to harass, is unwarranted, baseless and is lacking in evidentiary support, and as a result, Defendant is entitled to sanctions.

## FIRST AMENDED THIRD PARTY COMPLAINT

Defendant/Third Party Plaintiff, Red Wolf Logistics, LLC, by way of a First Amended Third Party Complaint, hereby says:

### FIRST COUNT
#### Contribution

1.     Third Party Defendant, JHD Logistics, LLC is, upon information and belief, a corporation organized and existing under the laws of the State of Texas with its principal place of business located at 848 West Mitchell Street – Apt. 269A, Arlington, Texas 76014.

2.     Third Party Defendant, Excellence Lifestyle, LLC is, upon information and belief, a corporation organized and existing under the laws of the State of Texas with its principal place of business located at 848 West Mitchell Street – Apt. 269A, Arlington, Texas 76014.

3.     Third Party Defendant, Ryion Cooley, upon information and belief, is a person and/or the owner of JHD Logistics, LLC and/or Excellence Lifestyle, LLC or any other entity(ies) who is domiciled with a principal residence located at 848 West Mitchell Street – Apt. 269A, Arlington, Texas 76014, who was involved in the transport of the 2020 Ford Explorer that is the subject of this case.

4.     Third Party Defendant, Quintae Conquers, upon information and belief, is a person and/or the owner of JHD Logistics, LLC and/or Excellence Lifestyle, LLC or any other entity(ies) who is domiciled with a principal residence located at 848 West Mitchell Street – Apt. 269A, Arlington, Texas 76014, who was involved in the transport of the 2020 Ford Explorer that is the subject of this case.

5.     Third Party Defendant, Clifford Hubbard, upon information and belief, is a person and/or the employee of JHD Logistics, LLC and/or Excellence Lifestyle, LLC or any other entity(ies) who is domiciled with a principal residence located at 3351 Highway 594 – Apt. 20, Monroe, Louisiana, who was involved in the transport of the 2020 Ford Explorer that is the subject of this case.

6.     Third Party Defendant(s) were the actual person(s) or entity(ies) that contracted; transported and/or delivered the 2020 Ford Explorer to Plaintiff in this case as shown by the Bill of Lading.

8

7.      There is factual information that indicates that the Third Party Defendant(s), jointly, severally and in the alternative, were improperly using Red Wolf Logistic's corporate identity for purposes of making deliveries and they were the actual party that handled the alleged delivery of the Vehicle.

8.      Red Wolf Logistics, LLC denies any liability whatsoever, but they nonetheless assert that any and all injuries and damages sustained by Plaintiff are the proximate result of the negligence of other parties known or unknown, including, but not limited to the third party defendant(s), JHD Logistics, LLC; Excellence Lifestyle, LLC; Ryion Cooley; Quintae Conquers; and/or Clifford Hubbard, and Red Wolf hereby demands contribution pursuant to New Jersey's Joint Tortfeasors Contribution Act, N.J.S.A. 2A:53A-1, et seq.; the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 et seq., and/or the Carmack Amendment(s), 49 U.S.C. §14706, et seq., from the third party defendant(s) for their proportionate share of any and all sums that may be adjudged against Red Wolf in this action.

**WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

## SECOND COUNT
### Indemnification

9.      Red Wolf  hereby incorporates its allegations to the preceding paragraphs of the First Amended Third Party Complaint as if fully set forth at length herein.

10.     Although Red Wolf denies any liability whatsoever, they nonetheless assert that any and all injuries and damages sustained by the Plaintiff is the proximate result of the negligence of other parties known or unknown, including, but not limited to the third party defendant, JHD Logistics, LLC; Excellence Lifestyle, LLC; Ryion Cooley; Quintae Conquers; and/or Clifford Hubbard, whose negligence/liability was primary and active, and if Red Wolf is found liable to Plaintiff with respect to said injuries and damages, such liability resulted solely from secondary, imputed, vicarious or passive

negligence, and third party defendants aforesaid are liable to Red Wolf by way of common law

indemnification, for any and all sums that Red Wolf may be required to pay in this action.

 **WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with

prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff

for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

### THIRD COUNT
#### Liability Under the Carmack Amendment

 11. Red Wolf hereby incorporates its allegations to the preceding paragraphs of the cross

claim as if fully set forth at length herein.

 12. The Third Party Defendant(s), JHD Logistics, LLC; Excellence Lifestyle, LLC; Ryion

Cooley; Quintae Conquers; and/or Clifford Hubbard, had a duty to deliver the cargo in the same condition

as it was in when it was received by them.

 13. Due to the negligence and/or legally culpable conduct and/or omissions of the Third

Party Defendant(s), or other parties, the cargo was damaged during delivery.

 14. Third Party Defendant(s) were aware that that they were responsible for the safe handling

of the cargo during transit.

 15. Third Party Defendant(s) are liable to Red Wolf for any and all alleged damages under

the Carmack Amendment(s), 49 U.S.C. §14706, *et seq.*

 **WHEREFORE** Defendant, Red Wolf, hereby demands dismissal of the Complaint with

prejudice, and respectfully requests that the Court enter a judgment in its favor and against the Plaintiff

for attorneys' fees and costs and any other relief that this Court deems just and appropriate.

### ANSWER TO ALL CROSSCLAIMS

 Red Wolf, by way of answer to any and all cross claims, hereby says:

 1. Red Wolf denies each and every allegation contained in any cross claims filed or to be

filed, and therefore the cross claimants are left to their proofs.

10

## DEMAND FOR JURY TRIAL

Defendant, Red Wolf, hereby demands a trial by jury as to all issues.

## CERTIFICATION

I certify that the matter in controversy is not the subject of any other pending action.  I know of no other parties to be joined at this time other than those named herein.

I am aware that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

MARC R. JONES, ESQUIRE (NJ#016022001)
Attorneys for Defendants – Red Wolf Logistics, LLC
155 Gaither Drive – Suite B
Mount Laurel, NJ 08054
856-761-3800
mjones@c-wlaw.com

DATED:        August 13, 2021

EXHIBIT "J"

 Cited
As of: August 23, 2021 3:41 PM Z

# *NII Brokerage, L.L.C. v. Roadway Express, Inc.*

United States District Court for the District of New Jersey

July 18, 2008, Decided; July 18, 2008, Filed

Civil Action No. 07-5125 (HAA)

**Reporter**
2008 U.S. Dist. LEXIS 64784 *; 2008 WL 2810160

NII BROKERAGE, L.L.C., Plaintiff, v. ROADWAY EXPRESS, INC., YELLOW TRANSPORTATION, INC., AACTION FREIGHTWAYS, INC., Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

personal jurisdiction, contacts, forum state, interstate, carrier, Carmack Amendment, discovery, motion to dismiss, preempted, transportation, alleges, Counts, frivolous, general jurisdiction, shipment, pound, lack of personal jurisdiction, reasonable particularity, minimum contact, per unit, damages, argues, state law claim, commerce

## Case Summary

### Procedural Posture

Plaintiff company sued defendants, a trucking company, a transporter and a shipper, and alleged breach of contract and bailment against the trucking company, and negligence by the trucking company, transporter and shipper under state law. The company also brought a claim under the Carmack Amendment to the Interstate Commerce Act (Carmack Amendment), *49 U.S.C.S. § 14706 et seq.*, against defendants. Defendants moved to dismiss.

### Overview

The company was a limited liability company that contracted with the trucking company for the transportation of at least six network/copier/printer/scanner units (units) in interstate commerce from New Jersey to various the company office locations in New York. The company alleged that when the units were delivered to the New York destinations, its representatives refused to accept delivery of the units because the units were either severely damaged or destroyed. The transporter and the shipper were either agents or contractors of the trucking company that transported the units within New York. The court first held that all the state law claims were preempted by the Carmack Amendment. The shipper moved to dismiss the claims against it for lack of personal jurisdiction. The claim giving rise to the action, the shipper's alleged negligence in the transportation of the company's units, did not occur in New Jersey but in New York because the shipper received the units from the trucking company in New York. Further, no additional factors that could subject the shipper to specific jurisdiction on the basis of relatedness were present.

### Outcome

The trucking company's and the transporter's motion to dismiss for failure to state a claim was granted as to the state law claims. The Carmack Amendment claim remained pending against the trucking company and the transporter. The shipper's motion to quash service and dismiss for lack of personal jurisdiction was granted and the shipper was dismissed from the case.

## LexisNexis® Headnotes

Transportation Law > Interstate Commerce > General Overview

*HN1*[⬇] **Transportation Law, Interstate Commerce**

The Carmack Amendment to the Interstate Commerce Act (Carmack Amendment), *49 U.S.C.S. § 14706(a)(1)*, provides for liability of common carriers for damage to or loss of goods during shipment. This amendment creates a nationally uniform policy governing interstate carriers' liability for property loss. The Carmack Amendment imposes full liability upon carriers for the actual loss or

2008 U.S. Dist. LEXIS 64784, *64784

injury to the property caused by a carrier.

Business & Corporate Compliance > ... > Buyer's Damages & Remedies > Limitation & Modification > General Overview

Transportation Law > Interstate Commerce > Federal Preemption

### HN2[⬇] Buyer's Damages & Remedies, Limitation & Modification

The Carmack Amendment to the Interstate Commerce Act, *49 U.S.C.S. § 14706 et seq.*, preempts state law causes of action seeking recovery for the value of goods damaged or destroyed during interstate shipment. In establishing this preemption doctrine, the United States Supreme Court has commented on its broad scope: Almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intends to take possession of the subject and supersede all state regulations with reference to it. When Congress acts in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceases to exist.

Civil Procedure > ... > Pleadings > Amendment of Pleadings > Leave of Court

### HN3[⬇] Amendment of Pleadings, Leave of Court

Under *Fed. R. Civ. P. 15(a)*, a party may amend a pleading once as a matter of course before being served with a responsive pleading. Other courts in the District of New Jersey have held that a motion to dismiss for failure to state a claim is not a responsive pleading.

Business & Corporate Compliance > ... > Buyer's Damages & Remedies > Limitation & Modification > General Overview

Transportation Law > Interstate Commerce > General Overview

### HN4[⬇] Buyer's Damages & Remedies, Limitation & Modification

To establish a prima facie case against a carrier under

the Carmack Amendment, *49 U.S.C.S. § 14706 et seq.*, a shipper must prove (1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) amount of the damages.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

### HN5[⬇] In Personam Actions, Long Arm Jurisdiction

Pursuant to *Fed. R. Civ. P. 4(e)*, a federal district court has personal jurisdiction over a non-resident defendant to the extent authorized by the law of the forum state in which the district court sits.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Long Arm Jurisdiction

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

### HN6[⬇] In Personam Actions, Long Arm Jurisdiction

New Jersey's long-arm statute confers personal jurisdiction broadly, and consequently allows a court to assert personal jurisdiction over a non-resident defendant to the full extent permitted by the *Due Process Clause of the Fourteenth Amendment to the United States Constitution*. In order for due process to be satisfied, the following must be shown: 1) the defendant has sufficient "minimum contacts" with the forum state; and 2) the exercise of personal jurisdiction over the defendant in the forum state does not offend traditional notions of fair play and substantial justice.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Purposeful Availment

2008 U.S. Dist. LEXIS 64784, *64784

*HN7*[⬇] **In Personam Actions, Minimum Contacts**

A plaintiff bears the burden of proving that a defendant has minimum contacts with the forum state sufficient enough for a court to exercise personal jurisdiction over the defendant. In order to meet this burden, the plaintiff has to establish that a court has either specific or general jurisdiction over the defendant. Specific jurisdiction exists when the claim is related to or "arises out of" the defendant's contacts with the forum state. The defendant's contacts with the forum state have to be such that he or she would reasonably anticipate being haled into court there. General jurisdiction exists if the defendant's contacts with the forum state are "continuous and systematic." The defendant's contacts cannot be the result of the plaintiff's unilateral activity and must illustrate that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

*HN8*[⬇] **In Personam Actions, Minimum Contacts**

For the maintenance of a suit against the defendant to comport with traditional notions of fair play and substantial justice, it must be reasonable to require the defendant to defend the suit in the forum state. The following factors are balanced in determining reasonableness: the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering substantive social policies.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

*HN9*[⬇] **In Personam Actions, Minimum Contacts**

For specific jurisdiction to exist, the plaintiff must satisfy two requirements. First, the plaintiff must show that the defendant has constitutionally sufficient minimum contacts with the forum. In evaluating minimum

contacts, a court first looks at the relationship between the defendant and the forum, specifically whether the defendant has directed enough activity toward the forum state to reasonably anticipate being haled into court there. Second, the court must determine whether doing so would comport with traditional notions of fair play and substantial justice.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > General Overview

*HN10*[⬇] **In Rem & Personal Jurisdiction, In Personam Actions**

Personal jurisdiction cannot be based on the unilateral activity of a third party.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Substantial Contacts

*HN11*[⬇] **In Personam Actions, Minimum Contacts**

In providing evidence of minimum contacts for the purpose of establishing general jurisdiction, the plaintiff bears the rigorous burden of showing that the defendant has substantial, continuous and systematic contacts with the forum state which are central to the defendant's business. Plaintiffs must show significantly more than bare minimum contacts with the forum state, and must establish general jurisdiction through an assertion of extensive and pervasive facts. The court generally assesses whether: the defendant owns any property within the forum state; specifically targeted the forum for its advertisements; has an authorized agent for service of process; pays taxes; has bank accounts or telephone listings; or is authorized to conduct business in the forum.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

Civil Procedure > ... > In Rem & Personal

2008 U.S. Dist. LEXIS 64784, *64784

Jurisdiction > In Personam Actions > Substantial Contacts

**HN12**[⬇️]  **In Personam Actions, Minimum Contacts**

The level of contacts required to establish general jurisdiction is much higher than the contacts necessary to establish specific jurisdiction.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > Minimum Contacts

**HN13**[⬇️]  **In Personam Actions, Minimum Contacts**

The United States Court of Appeals for the Third Circuit has held that, unless the claim of personal jurisdiction is clearly frivolous, discovery on the issue of jurisdiction should generally be allowed in order to aid the plaintiff in discharging his or her burden of demonstrating contacts with the forum state sufficient to give the court personal jurisdiction over the defendant. The Third Circuit has held, however, that a mere unsupported allegation that the defendant transacts business in an area is clearly frivolous.

Civil Procedure > ... > In Rem & Personal Jurisdiction > In Personam Actions > General Overview

**HN14**[⬇️]  **In Rem & Personal Jurisdiction, In Personam Actions**

In order to secure the ability to conduct discovery before the district court dismisses for lack of personal jurisdiction, the plaintiff must establish with reasonable particularity sufficient contacts between the defendant and the forum state.

**Counsel:** [*1] Michael S. Haratz, Esq., ORLOFF, LOWENBACH, STIFELMAN & SIEGEL, P.A., Roseland, New Jersey, *Attorneys for Plaintiff.*

William D. Bierman, Esq., Thomas C. Martin, Esq., NOWELL AMOROSO KLEIN BIERMAN, P.A., Hackensack, New Jersey, *Attorneys for Defendants Roadway Express, Inc. and Yellow Transportation, Inc.*

John C. Lane, Esq., LAW OFFICES OF JOHN C. LANE, Wyckoff, New Jersey, *Attorneys for Defendant Aaction Freightways, Inc.*

**Judges:** Hon. Harold A. Ackerman, U.S.D.J.

**Opinion by:** Harold A. Ackerman

## Opinion

**OPINION & ORDER**

**ACKERMAN,** Senior District Judge:

This matter comes before the Court on two motions to dismiss. Defendant Roadway Express, Inc. ("Roadway") and Defendant Yellow Transportation, Inc. ("Yellow") have moved to dismiss (Doc. No. 6) for failure to state a claim or, in the alternative, to dismiss Counts I through IV of Plaintiff NII Brokerage, L.L.C.'s ("NII") Complaint because they are preempted by the Carmack Amendment to the Interstate Commerce Act ("Carmack Amendment"), 49 U.S.C. § 14706, et seq. Defendant Aaction Freightways, Inc. ("Aaction") has moved to quash service and dismiss for lack of personal jurisdiction (Doc. No. 9). For the reasons stated below, both motions to dismiss will be GRANTED.

*Background*

Plaintiff **[*2]** NII is a limited liability company that contracted with Defendant Roadway for the transportation of at least six Toshiba network/copier/printer/scanner units ("Units") in interstate commerce from Fairfield, New Jersey to various NII office locations in New York. NII alleges that when the Units were delivered to the agreed-upon New York destinations, its representatives refused to accept delivery of the Units because the Units were either severely damaged or destroyed. Yellow and Aaction are either agents or contractors of Roadway that transported the Units within New York. [1]

NII's Complaint alleges that, prior to shipment, the Units were cleaned, custom-reprogrammed and tested to confirm that they were functional. NII further alleges that when Roadway accepted possession of the Units in

---

[1] NII's Complaint does not state whether Roadway transferred possession of some or all of the Units to Yellow and Aaction when the Units arrived in New York. Therefore, NII's Complaint is unclear as to how many of the Units either Roadway, Yellow and/or Aaction were responsible for transporting to the NII New York offices.

2008 U.S. Dist. LEXIS 64784, *2

New Jersey, they were securely wrapped and packaged, and placed tightly into the [*3] front of an empty eighteen-wheel trailer. Roadway allegedly did not express any concern regarding the adequacy of the packaging of the Units. Recent photographs of the Units show extreme physical damage, if not total destruction. According to NII, at least one supplemental report of MTI Inspection Services ("MTI"), which was retained by Roadway, reflects that the Units were "not secured in the trailer and [were] able to move about freely during shipment." (Compl. P 22.) Another MTI report indicates that all four sides of each Unit were covered by packaging material (a stretchable plastic cover over polystyrene sheets 3/8 thick) which was "ripped open in places and the foam sheets [were] broken into many pieces on all sides." (Id.)

NII seeks damages in excess of $ 150,000 for Roadway's alleged failure to deliver the Units undamaged. NII alleges that Roadway has only offered to pay a maximum loss liability of $ 1.00 per pound, per Unit instead of the $ 25.00 per pound, per Unit loss liability for which NII allegedly contracted with Roadway. Roadway argues that its liability has not been established and that the Units were "used machinery" subject to a maximum loss liability under Roadway's [*4] tariffs of $ 1.00 per pound, per Unit. (Id. P 24.) NII's Complaint alleges that e-mails from Melissa Martinez of Roadway to NII's information technology consultant confirm the agreement between Roadway and NII for loss protection not to exceed $ 25.00 per pound, per Unit, stating in relevant part:

> For In-Network shipments, liability for loss, damage, or delay to cargo will not exceed $ 25.00 per pound per [Unit], subject to maximum liability of $ 100,000 per shipment, or actual value, whichever is lower.

(Id. P 13.)

On September 26, 2007, NII filed a Complaint in the Superior Court of New Jersey, Law Division, Essex County. The Complaint sets forth the following counts: breach of contract by Roadway (Count I), negligence by Roadway (Count II), bailment by Roadway (Count III), and negligence by Yellow and Aaction (Count IV). On October 24, 2007, Roadway and Yellow removed the instant action to this Court, and on October 30, 2007, Roadway and Yellow jointly filed a motion to dismiss. On November 7, 2007, attached to its response to Roadway's and Yellow's motion, NII filed an Amended Complaint containing a fifth count, expressly pursuant to the Carmack Amendment, which claims that all three [*5] Defendants are liable to NII in accordance with the

loss liability formula of $ 25.00 per pound, per Unit (Count V). On November 28, 2007, Aaction filed its motion to dismiss for lack of personal jurisdiction.

*Analysis*

**I. NII's State Law Claims Are Preempted by the Carmack Amendment**

*HN1*[↑] The Carmack Amendment "provides for liability of common carriers for damage to or loss of goods during shipment." S&H Hardware & Supply Co. v. Yellow Transp., Inc., 432 F.3d 550, 554 (3d Cir. 2005). This amendment "created a 'nationally uniform policy governing interstate carriers' liability for property loss.'" Penske Logistics, Inc. v. KLLM, Inc., 285 F. Supp. 2d 468, 472 (D.N.J. 2003) (quoting N.Y., N.H. & Hartford R. Co. v. Nothnagle, 346 U.S. 128, 131, 73 S. Ct. 986, 97 L. Ed. 1500 (1953)) (additional citation omitted). The Carmack Amendment imposes full liability upon carriers for "the actual loss or injury to the property caused by" a carrier. 49 U.S.C. § 14706(a)(1); see Carmana Designs Ltd. v. N. Am. Van Lines Inc., 943 F.2d 316, 319 (3d Cir. 1991) (describing liability imposed on carriers by Carmack Amendment as "absolute").

*HN2*[↑] The Carmack Amendment preempts state law causes of action seeking recovery for the value of goods damaged [*6] or destroyed during interstate shipment. In establishing this preemption doctrine in *Adams Express v. Croninger*, the Supreme Court commented on its broad scope: "Almost every detail of the subject is covered so completely that there can be no rational doubt that Congress intended to take possession of the subject and supersede all state regulations with reference to it . . . [W]hen Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist." 226 U.S. 491, 505-06, 33 S. Ct. 148, 57 L. Ed. 314 (1913).

Roadway and Yellow argue that the Carmack Amendment preempts the state law claims of Counts I through IV of NII's Complaint. Other courts in this District have held that similar state law claims are completely preempted by the Carmack Amendment. See Usinor Steel Corp. v. Norfolk S. Corp., 308 F. Supp. 2d 510, 518 (D.N.J. 2004) (holding that "Plaintiff's claims for breach of contract, negligence, breach of bailment and conversion are preempted"); Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 344-345

2008 U.S. Dist. LEXIS 64784, *6

_(D.N.J. 2001)_ (denying motion to remand and holding that "the Carmack Amendment completely preempts Plaintiffs' state law claims because **[*7]** Plaintiffs' complaint, in alleging a cause of action against interstate carriers based on loss or damage to shipped goods, articulates a federal question"); _Harrah v. Minn. Mining and Mfg. Co., 809 F. Supp. 313, 317 (D.N.J. 1992)_ (stating that "common law actions against interstate carriers are preempted by the Interstate Commerce Act").

Counts I through IV allege state law claims for breach of contract, negligence and bailment for damage or destruction of the Units during interstate shipment. This Court concludes that Counts I through IV are preempted by the Carmack Amendment and must be dismissed.

**II. Count V of NII's Amended Complaint Remains Pending**

NII argues that its Complaint should not be dismissed in its entirety because Count V of its Amended Complaint pleads a cause of action under the Carmack Amendment, therefore resolving any pleading deficiencies in Counts I through IV of its initial Complaint. NII contemporaneously filed its Amended Complaint with its opposition to Roadway's and Yellow's motion to dismiss. Though Roadway and Yellow do not explicitly contest NII's right to file an Amended Complaint, they suggest that it is not an active complaint by referring to it in their **[*8]** reply to NII's opposition papers as the "proposed Amended Complaint." (Def.'s Reply Br. at 1.)

_HN3_[⬆] Under _Federal Rule of Civil Procedure 15(a)_, a party may amend a pleading "once as a matter of course before being served with a responsive pleading." _Fed. R. Civ. P. 15(a)_. Other courts in this District have held that a motion to dismiss for failure to state a claim is not a responsive pleading. _Sunset Fin. Res., Inc. v. Redevelopment Group V, LLC, 417 F. Supp. 2d 632, 641 (D.N.J. 2006)_ (holding that "a motion to dismiss is not a responsive pleading under _Rule 15(a)_"). In the instant case, Roadway and Yellow have filed a _Rule 12(b)(6)_ motion to dismiss but have not yet filed answers. Accordingly, since neither Roadway nor Yellow have filed a responsive pleading, NII has the right to amend its Complaint without leave of court. _Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)_ ("[I]n the typical case in which a defendant asserts the defense of failure to state a claim by motion, the plaintiff may amend the complaint once 'as a matter of course'

without leave of court."). NII has properly exercised its right in filing its Amended Complaint.

Roadway and Yellow do not dispute that Count V establishes **[*9]** a prima facie case under the Carmack Amendment. _HN4_[⬆] "To establish a prima facie case against a carrier under the Carmack Amendment, a shipper must prove '(1) delivery of goods to the initial carrier in good condition, (2) damage of the goods before their delivery to their final destination, and (3) amount of the damages.'" _Paper Magic Group, Inc. v. J.B. Hunt Transp., Inc., 318 F.3d 458, 461 (3d Cir. 2003)_ (quoting _Beta Spawn, Inc. v. FFE Trans. Servs., Inc., 250 F.3d 218, 223 (3d Cir. 2001))_. However, Roadway and Yellow argue in passing that Count V is not allowed by the Carmack Amendment to the extent that it seeks punitive damages, interests, and costs, and attorneys' fees. Because Roadway and Yellow have not moved to dismiss Count V of NII's Amended Complaint, this Court need not decide at this time whether such damages are allowed by the Carmack Amendment. This Court finds that Counts I through IV are preempted by the Carmack Amendment and will grant Roadway's and Yellow's motion to dismiss with regard to those Counts. [2]

**III. This Court Does Not Have Personal Jurisdiction Over Defendant Aaction**

Aaction has moved to dismiss the claims against it for lack of personal jurisdiction. _HN5_[⬆] Pursuant to _Federal Rule of Civil Procedure 4(e)_, a federal district court has personal jurisdiction over a non-resident defendant to the extent authorized by the law of the forum state in which the district court sits. _A.V. Imps., Inc. v. Col de Fratta, S.p.A., 171 F. Supp. 2d 369, 370 (D.N.J. 2001)_. _HN6_[⬆] New Jersey's long-arm statute confers personal jurisdiction broadly, and consequently allows this Court to assert personal jurisdiction over a non-resident defendant to the full extent permitted by the _Due Process Clause of the Fourteenth Amendment to the United States Constitution_. _Decker v. Circus Circus Hotel, 49 F. Supp. 2d 743, 745-46 (D.N.J. 1999)_ (citing _Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992))_. In order for due process to be satisfied, the following must be shown: 1) the defendant has sufficient "minimum contacts" with the forum state;

---

[2] Because Count V sets forth a Carmack Amendment claim, this Court need not consider NII's allegation that Counts I through IV, although styled as state law claims, assert **[*10]** facts sufficient to allege a Carmack Amendment claim.

2008 U.S. Dist. LEXIS 64784, *10

and 2) the exercise of personal jurisdiction over the defendant in the forum state does not offend "traditional [*11] notions of fair play and substantial justice." Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150-51 (3d Cir. 1996) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

HN7[↑] The plaintiff bears the burden of proving that the defendant has minimum contacts with the forum state sufficient enough for a court to exercise personal jurisdiction over the defendant. Carteret Sav., 954 F.2d at 145-46. In order to meet this burden, the plaintiff has to establish that a court has either specific or general jurisdiction over the defendant. Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987). Specific jurisdiction exists when the claim is related to or "arises out of" the defendant's contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984). The defendant's contacts with the forum state have to be such that he or she would "reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). General jurisdiction exists if the defendant's contacts with the forum state are "continuous [*12] and systematic." See Helicopteros, 466 U.S. at 415-16. The defendant's contacts cannot be the result of the plaintiff's unilateral activity and must illustrate that the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958).

HN8[↑] For the maintenance of a suit against the defendant to comport with "traditional notions of fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. World-Wide Volkswagen, 444 U.S. at 292 (quoting Int'l Shoe Co., 326 U.S. at 316). The following factors are balanced in determining reasonableness: the burden on the defendant; the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering substantive social policies. See World-Wide Volkswagen, 444 U.S. at 292.

A. This Court cannot exercise specific jurisdiction over Aaction.

NII [*13] has failed to meet its burden of demonstrating that its claim is related to or arose out of Aaction's contacts with New Jersey. HN9[↑] For specific jurisdiction to exist, the plaintiff must satisfy two requirements. First, "the plaintiff must show that the defendant has constitutionally sufficient 'minimum contacts' with the forum." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (quoting Burger King, 471 U.S. at 474). In evaluating minimum contacts, the Court first looks at the relationship between the defendant and the forum, specifically whether the defendant has directed enough activity toward the forum state to reasonably anticipate being haled into court there. Giangola v. Walt Disney World Co., 753 F. Supp. 148, 155 (D.N.J. 1990) (citing Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977)). Second, the court must determine whether doing so would comport with "traditional notions of 'fair play and substantial justice.'" IMO Indus., 155 F.3d at 259 (quoting Int'l Shoe, 326 U.S. at 316).

NII asserts that Aaction is subject to specific personal jurisdiction in New Jersey because Aaction knew that the transportation of the Units was an interstate transaction. NII argues that discovery [*14] will likely reveal that, at the time Aaction contracted with Roadway to transport the Units from West Seneca, New York to Lowville, New York, Aaction knew that the Units originated from a shipper in New Jersey. NII alleges that Aaction's knowledge is attributable to the fact that Aaction was either provided with or saw the quotes and/or bills of lading issued to NII referencing the interstate transportation of the Units. Therefore, NII argues that Aaction had reason to be aware of the likelihood that Aaction could be subject to suit in New Jersey in the event of damage or destruction to the Units.

Despite NII's allegations to the contrary, the exercise of specific jurisdiction in the present case would be inappropriate. In this case, the claim giving rise to the action, Aaction's alleged negligence in the transportation of NII's Units, did not occur in New Jersey but in New York because Aaction received the Units from Roadway in West Seneca, New York. Further, no additional factors that could subject Aaction to specific jurisdiction on the basis of relatedness are present in this case. There was no direct contact between NII and Aaction agents in New Jersey, no negotiations or agreements [*15] were conducted or executed in New Jersey, and

2008 U.S. Dist. LEXIS 64784, *15

no advertisements or communications were directed to NII or alleged to have induced NII to contact Aaction agents. Therefore, Aaction could not have reasonably anticipated being haled into court in New Jersey.

NII further argues that courts have long held that it is sufficient for the purposes of due process in the exercise of specific personal jurisdiction that the suit in question is based upon a contract that has substantial connection with the forum state. *See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)*; *see also Malavasi v. Villavecchia, 62 N.J. Super. 510, 519-21, 163 A.2d 214 (Law Div. 1960)*. However, the contract for the transportation of the Units from New Jersey to New York was executed solely between NII and Roadway. Aaction was only responsible for the transportation of the Units from one New York location to another New York location. Aaction's relationship with Roadway is not enough to confer personal jurisdiction over Aaction because **HN10**[↑] personal jurisdiction cannot be based on the unilateral activity of a third party, such as Roadway. *See Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 121, 649 A.2d 379 (1999)* (holding that requirement of [*16] purposeful availment protects defendants against being "haled into court in a foreign jurisdiction solely . . . as a result of the unilateral activity of some other party") (citing *Burger King, 471 U.S. at 475*).

In summary, NII has failed to show that the claim is related to or arose out of Aaction's contacts with New Jersey because Aaction lacks sufficient minimum contacts with New Jersey to serve as a basis for specific personal jurisdiction. Because NII has been unable to prove that sufficient minimum contacts between Aaction and New Jersey exist, a discussion of whether the exercise of personal jurisdiction over Aaction in New Jersey would violate traditional notions of fair play and substantial justice is not warranted.

B. This Court cannot exercise general jurisdiction over Aaction.

NII does not explicitly allege that the Court has general personal jurisdiction over Aaction. However, a brief discussion of this issue is warranted. **HN11**[↑] In providing evidence of minimum contacts for the purpose of establishing general jurisdiction, the plaintiff bears the rigorous burden of showing that the defendant has substantial, continuous and systematic contacts with the forum state which are central [*17] to the defendant's business. *Osteotech, Inc. v. Gensci Regeneration Sci., Inc., 6 F. Supp. 2d 349, 353 (D.N.J. 1998)* (citing

*Helicopteros, 466 U.S. at 414-16*). Plaintiffs must show significantly more than bare minimum contacts with the forum state, and must establish general jurisdiction through an assertion of extensive and pervasive facts. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982)*. The court generally assesses whether: the defendant owns any property within the forum state; specifically targeted the forum for its advertisements; has an authorized agent for service of process; pays taxes; has bank accounts or telephone listings; or is authorized to conduct business in the forum. *Decker, 49 F. Supp. 2d at 749*.

Aaction has no contacts with New Jersey. Aaction is a New York corporation with a principal place of business in Watertown, New York. Aaction's business activities are limited exclusively to New York state and areas surrounding Ontario, Canada. Specifically, Aaction's business is conducted almost entirely in northern New York. Aaction does not have a place of business, employees, bank accounts or telephone listings in New Jersey, [*18] and neither solicits business nor advertises in New Jersey. Additionally, Aaction neither owns nor leases property in New Jersey, and is not qualified under New Jersey's corporate laws to do business in New Jersey. It follows that Aaction did not purposefully avail itself of any benefits of doing business in New Jersey. *See, e.g., Database Am., Inc., v. Bell S. Adver. & Publ'n Corp., 825 F. Supp. 1195, 1213-15 (D.N.J. 1993)* (holding that plaintiff failed to satisfy New Jersey long-arm statute where corporate defendant did not conduct business, have agents, pay taxes, send goods or solicit business in New Jersey, and finding defendant's derivation of income from state to be legally insufficient to confer personal jurisdiction).

In sum, this Court concludes that NII has failed to prove that Aaction has engaged in continuous and systematic contacts with New Jersey sufficient to establish general jurisdiction, especially considering that **HN12**[↑] the level of contacts required to establish general jurisdiction is much higher than the contacts necessary to establish specific jurisdiction. *See Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323, 558 A.2d 1252 (1989)*.

C. Jurisdictional discovery is not warranted.

NII [*19] has not had the opportunity to obtain any jurisdictional discovery from Aaction, and thus argues that it should be allowed to conduct discovery as to Aaction's travel and toll logs or other documents, which would reflect the extent to which Aaction conducts

2008 U.S. Dist. LEXIS 64784, *19

business within New Jersey, if at all. *HN13*[⬆] The Third Circuit has held that, unless the claim of personal jurisdiction is clearly frivolous, discovery on the issue of jurisdiction should generally be allowed in order to aid the plaintiff in discharging his or her burden of demonstrating contacts with the forum state sufficient to give the court personal jurisdiction over the defendant. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997)* (stating that "[o]ur rule is generally that jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous'"); *see also Compagnie Des Bauxites De Guinee v. L'Union Atlantique S.A. D'Assurances, 723 F.2d 357, 362 (3d Cir. 1983)*. The Third Circuit has held, however, that "a mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc., 107 F.3d at 1042.*

*HN14*[⬆] In order [*20] to secure the ability to conduct discovery before the district court dismisses for lack of personal jurisdiction, the plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)* (quoting *Provident Nat'l Bank, 819 F.2d at 437*) (additional citation omitted); *see also Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003)* ("If a plaintiff presents factual allegations that suggest 'with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained.").

This Court will deny NII's request for limited jurisdictional discovery because its claim of personal jurisdiction is clearly frivolous and the potential contacts between Aaction and New Jersey do not meet the "reasonable particularity" requirement of *Mellon Bank*. Courts have denied jurisdictional discovery in similar situations. *Veliz v. Americorp Builders, Inc., 2007 U.S. Dist. LEXIS 43560, 2007 WL 1746248, at *4 (D.N.J. June 15, 2007)* (Ackerman, J.) (noting "clearly frivolous" standard [*21] and ultimately dismissing for lack of personal jurisdiction without granting discovery); *see also Garshman v. Universal Res. Holding, Inc., 641 F. Supp. 1359, 1364, 1366 (D.N.J. 1986)* (denying jurisdictional discovery because claim was clearly frivolous where defendant had never transacted business or owned property in New Jersey; did not have an officer, agent or employee acting on its behalf here; and did not have an office, postal address, telephone or other physical manifestation in the state); *Poe v. Babcock Int'l, PLC, 662 F. Supp. 4, 7 (M.D. Pa. 1985)* ("It would be

inappropriate for this court to allow plaintiff to conduct a fishing expedition in order to construct a basis for jurisdiction.").

NII alleges that the following limited information that it has acquired via documents available on the Internet demonstrates that Aaction is not merely a New York company whose operations are solely confined to intrastate activities: Aaction is registered with the Federal Motor Carrier Safety Administration ("FMCSA") as an "interstate," not "intrastate only," carrier; Aaction's mode of operations is described on the National Motor Freight Classification ("NMFC") [3] as "interstate common [*22] carrier," not "intrastate only," as various other carriers are described; and Aaction has entered into insurance contracts with two New Jersey-based insurance companies. NII asserts that, as a result, its claim of personal jurisdiction is not clearly frivolous and it should therefore be granted the opportunity to conduct limited jurisdictional discovery.

NII's arguments lack merit. Aaction is registered with the FMCSA because it operates commercial motor vehicles in excess of 10,000 pounds per gross vehicle weight. Further, Aaction is registered as an interstate carrier because of the nature of its business, which includes commerce with Ontario, Canada, and interline service for other U.S. motor carriers who are engaged in interstate commerce. But Aaction does not do any business in New Jersey and does not perform any trucking operations in New Jersey. Aaction's registration with FMCSA does not establish with "reasonable particularity" the potential of sufficient contacts between Aaction and New Jersey to rise [*23] to the level of continuous and systematic contacts. *Mellon Bank, 960 F.2d at 1223* (quoting *Provident Nat'l Bank, 819 F.2d at 437*) (additional citation omitted). Similarly, that NMFC describes Aaction as an "interstate common carrier" does not meet the "reasonable particularity" requirement of *Mellon Bank* because it fails to suggest any contact between Aaction and *New Jersey*. *Id.* Finally, while Aaction's insurance has been placed by Aaction's broker with various companies in a number of locations, two of which are headquartered in New Jersey, the location of a defendant's insurance company in the forum state is too causally attenuated to meet *Mellon Bank's* "reasonable particularity" requirement with regard to general or specific jurisdiction. *Id.* Because NII's claim of personal jurisdiction is clearly frivolous,

---

[3] Aaction is a member, along with over 1,000 other motor carriers, of the National Motor Freight Traffic Association, which is a voluntary organization that publishes the NMFC.

2008 U.S. Dist. LEXIS 64784, *23

this Court will not grant jurisdictional discovery.

### Conclusion and Order

For the foregoing reasons, it is hereby ORDERED that Defendants Roadway's and Yellow's motion to dismiss for failure to state a claim (Doc. No. 6) is GRANTED. Counts I through IV of Plaintiff NII's Complaint are dismissed as preempted by the Carmack Amendment. Count V of its Amendment Complaint remains pending [*24] against Roadway and Yellow. Defendant Aaction's motion to quash service and dismiss for lack of personal jurisdiction (Doc. No. 9) is GRANTED. Aaction shall be dismissed from this case.

Dated: July 18, 2008

Newark, New Jersey

/s/ Harold A. Ackerman

U.S.D.J.

**End of Document**

EXHIBIT "K"

Case 1:21-cv-14647-JHR-SAK    Document 11-1    Filed 08/24/21    Page 77 of 97 PageID: 248

8/24/2021                Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

 Caution

As of: August 24, 2021 3:29 PM Z

## *Phoenix Ins. Co. v. Norfolk S. R.R. Corp.*

United States District Court for the District of New Jersey

May 16, 2014, Decided; May 16, 2014, Filed

Civ. No. 11-00398 (KM)

**Reporter**

2014 U.S. Dist. LEXIS 67515 *

The Phoenix Insurance Co., Limited as subrogator underwriter of Enerco Enterprises Limited, Plaintiff, v. Norfolk Southern Railroad Corp. and Kavanagh Logistics Inc., Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

carrier, shipper, subrogation, shipment, transportation, coverage, insured, Transformer, limitation of liability, Carmack Amendment, opted, rates, limited liability, preempted, rail-carrier, damages, court of appeals, bill of lading, argues, intermediary, arranged, railroad, interstate, Carriage, broker, breach of contract, fair opportunity, transfer company, freight rate, preemption

**Counsel:** **[*1]** Appearances: Kevin J. Bruno, BLANK ROME LLP, Princeton, NJ, Attorney for Plaintiff.

Jeffrey D. Cohen, Christopher J. Merrick, KEENAN COHEN & HOWARD P.C., Jenkintown, PA, Attorneys for Defendant Norfolk Southern Railway Company.

Alan C. Milstein, Michael Dube, SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, P.A., Moorestown, NJ, Attorneys for Defendant Kavanagh Logistics, Inc.

**Judges:** DICKINSON R. DEBEVOISE, Senior United States District Judge.

**Opinion by:** DICKINSON R. DEBEVOISE

## Opinion

**DEBEVOISE, Senior District Judge**

This case arises out of a claim raised by an insurance company as the subrogated underwriter of its insured. Plaintiff Phoenix Insurance Co. Limited ("Phoenix")

argues that its insured, Enerco Enterprises Limited ("Enerco"), was not notified of its right to full insurance liability pursuant to the Carmack Amendment, *49 USC 11706*, thus entitling it to damages on various grounds. Phoenix brings a cause of action against Defendant Norfolk Southern Railway Company ("Norfolk Southern") for breach of contract, negligence, and disregard of duties and obligations under the Carmack Amendment for damage which occurred to Enerco's electrical transformer (the "Transformer") while en route from New Jersey to Canada. **[*2]** Phoenix brings a second cause of action against Defendant Kavanagh Logistics ("Kavanagh") for breach of contract, negligence, and breach of its obligation as an agent of Enerco, for its role in arranging the shipment of the Transformer.

The Court is presented with Phoenix's motion for partial summary judgment on limitation of liability; Norfolk Southern's motion for partial summary judgment on limited liability and preemption of the state law claims against it for breach of contract and negligence; and Kavanagh's motion for summary judgment on all claims brought against it: breach of contract, negligence, and breach of its obligation as an agent of Enerco. For the reasons set forth below, Phoenix's motion is denied, Norfolk Southern's motion is granted in full, and Kavanagh's motion is granted in part to the extent that the subrogation action may proceed up to the limitation of liability. There remain the Carmack Amendment claim against Phoenix subject to the limitation of liability, and the state law claims against Kavanagh, also subject to the limitation of liability.

### I. BACKGROUND

#### A. Factual History

Plaintiff Phoenix brings this suit as the subrogated insurance underwriter of Enerco, **[*3]** an Israeli business which sells large electrical transformers.

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...        2/16

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 78 of 97 PageID: 249

8/24/2021        Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 2 of 14

2014 U.S. Dist. LEXIS 67515, *3

Phoenix and Enerco maintained a floating policy agreement which provides all-risk coverage by which Phoenix is notified prior to each shipment, and by which Phoenix is notified on a monthly basis of shipments already shipped. Phoenix covers loss or damage to the shipment based on the contractual obligation of the delivery at issue. It is undisputed that Phoenix charged Enerco no more than $15,000 to cover shipment of the Transformer at issue which was worth approximately $2,000.000, for its shipment from the country of manufacture, Israel, to its destination in Canada, regardless of the method of transportation used.

On or about June 5, 2007, Mr. Gideon Muscatel of Enerco contacted Mr. Larry Pharr of Kavanagh, a transportation logistics company, for a price quote for the rail transportation of the Transformer from Port Elizabeth, New Jersey to Ontario, Canada. Specifically, the request covered delivery of the containers by rail from the port to Canada, and back. (Pl.'s Ex. G.) When Mr. Muscatel arranged for the transportation of the Transformer, he was aware that Phoenix covered Enerco for any risk of loss. This was not **[*4]** the first goods arrangement between Enerco and Kavanagh. Indeed, the Transformer was the seventh or eighth manufactured by Enerco for which Kavanagh arranged transport.

All communications with Kavanagh regarding the details of the transportation arrangements of the Transporter were conducted between Mr. Pharr and Mr. Muscatel. Mr. Pharr began working for Kavanagh in 2002 after working in the trucking industry since 1970. Mr. Pharr had been employed by Kavanagh for five years before the transportation of the transformer was arranged. At the time transportation for the transformer was arranged, Mr. Pharr had dealt with Norfolk Southern for over five years.

It is undisputed that Kavanagh performed more services on behalf of Enerco than simply ordering rail transportation. Kavanagh also coordinated the rail carrier to ensure that the rail car was available at the port of arrival, arranged for the lashing of the transformer to the rail car, and coordinated offload of the Transformer with its final purchaser and destination.

On or about June 18, 2007, Mr. Pharr requested a quote from Norfolk Southern to perform the relevant rail carriage. On June 27, 2007, Norfolk Southern sent an email to **[*5]** Mr. Phar offering a freight rate of $44,123, offer open until December 31, 2007. Norfolk Southern's email also stated: "Rate offered at maximum carrier's

liability of $25,000 per shipment. *Greater liability coverage is available, rates subject to change accordingly.*" (emphasis added). Kavanagh did not forward this email detailing Norfolk Southern's price quote and availability of greater liability coverage to Enerco.

Norfolk Southern subsequently sent Kavanagh a Rail Authority NSSQ 44504 Transmittal (the "Rate Transmittal") which reiterates the freight rate, and notes "limited railroad liability to a maximum of $25,000 per car for loss or damage to commodity." The Rate Transmittal additionally provides that the pricing is "subject to the rules and provisions published in Norfolk Southern Railway Conditions of Carriage — Series or successor publication."[1] Kavanagh did not forward the Rate Transmittal to Enerco, although the Conditions of Carriage referenced therein is available to the public on the Internet. The record does not support a factual finding that Enerco had notice of the existence of the Norfolk Southern's Conditions of Carriage, although Kavanagh clearly did.

On June 27, 2007, Kavanagh emailed Enerco its own quote of $66,960 which included the cost of rail transportation, the cost of specialized railcars, the cost of the securement of the Transformer to the railcar, and Kavanagh's markup. Of import here, Kavanagh provided no notice of the availability of a rate for full liability, an alternative freight rate, the statement contained in Norfolk Southern's June 27 email concerning the availability of greater liability coverage, or the Rate Transmittal itself which internally referenced **[*7]** the Conditions of Carriage which itself limitedly references levels of liability. Rather, Kavanagh informed Enerco that the rail shipment and container shipment was subject to "$25,000 limited liability per car."

---

[1] Rule 290 of **[*6]** the Conditions of Carriage sets forth carrier liability for loss and damage, and provides in relevant part:

Unless modified in a transportation contract or a general or customer specific rate quotation, NS will assume liability for loss and damage under the terms of 49 USC 11706 and the terms of the Uniform Bill of Lading as specified in Rule 150 herein. Where provisions maintained by other railroad parties to the through route differ from those provided herein, the level of liability assumed by the origin carrier will apply; provided, however, that such level of liability shall not exceed the level of liability assumed under the Carmack Amendment.

(Pl.'s Ex. M.)

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...        3/16

8/24/2021        Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._2014 U.S. Di.PDF

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 79 of 97 PageID: 250

Page 3 of 14

2014 U.S. Dist. LEXIS 67515, *6

Norfolk Southern has an internal value policy which estimates full Carmack liability coverage at twenty-five percent of the total value of the item. Here, the Transformer was valued at two-million dollars, and thus the rail-carrier would have provided full Carmack coverage for $500,000. (Achimasi Dep., 123:19-124:5; 125:6-22.)[2]

According to Mr. Muscatel, based on his dealings, transportation logistics companies always provide a $25,000 limited liability cap with regard to use of different rail companies, and "there is no other option" and the cap is "not something that you can even negotiate." (Muscatel Dep. 69:2 - 70:9; 72:4-6.) Indeed, Mr. Muscatel was under the impression that "[t]his is a policy dictated by the rail company. It says its [sic] 25 limited liability, take it or leave it. So I have to take it." (Id.) Moreover, Mr. Muscatel testified:

> [T]his issue of being able to bypass the limitation of liability only came up later, much later, pursuant to this lawsuit and investigation afterwards by The Phoenix that this question even came up and the ability to actually do it came up. Before that, that wasn't an issue at all. It was not even an option.

(Id. at 74:1-8.) Importantly, Mr. Muscatel testified that it is "impossible" to know whether Enerco would have actually purchased full Carmack coverage had it known of its availability. (Muscatel Dep. at 103:10-106:10.)

Mr. Pharr testified that he did not [*9] provide information regarding the option of greater liability to Enerco because he knew that Enerco was already insured with Phoenix. Further, Mr. Muscatel instructed Mr. Pharr to obtain the lowest freight rates possible for the rail transportation of the Transformer. Mr. Pharr had previously arranged for the transportation of Enerco's freight many times prior to this shipment, and Mr.

Muscatel had always requested the lowest rate available. Indeed, Mr. Pharr testified that he understood that the rail-carrier could offer Enerco higher liability insurance at a greater rate (Pharr Dep. 38:9 - 39:5, 45:5-11), although the record is not clear as to Mr. Pharr's knowledge of the availability of full Carmack Coverage. Specifically, his deposition testimony sets forth:

> Q. But you don't know on the railroad side if they could obtain full coverage, do you?
> A. No.
> Q. Do you know whether the customer could make a declared value and fully, as you've used the word, insure with the railroad that declared value?
> A. My understanding is yes.
> (Pharr Dep. 45:20 - 46:1.)

It is undisputed that no Kavanagh customer has ever chosen to purchase full Carmack coverage. Indeed, Mr. Kavanagh testified that Enerco never [*10] did so during the entirety of Mr. Kavanagh's thirty years of experience in the business. Consistently, Ms. Achimasi had no recollection of a Norfolk Southern customer accepting any Carmack liability rates. (Milstein Cert., Ex. F.)

Relatedly, Norfolk Southern never advised Enerco directly of any alternative freight rate or any rate based on full liability. Kavanagh never received any instructions from Norfolk Southern about providing alternative or full freight rates to the shipper. Indeed, Norfolk Southern did not have a policy of requiring logistics providers to give rates that reflect full liability.

The shipment of the Transformer was delayed and on October 17, 2007, Enerco advised Mr. Pharr that the Transformer would be shipped from Israel in November and requested that Kavanagh order a railcar for its arrival at Port Elizabeth. After some discussion about a change in destination in Canada, Mr. Pharr ultimately confirmed that Norfolk Southern was prepared to carry the Transformer for the same price and that "the same conditions as originally provided will apply."

Enerco shipped the Transformer on November 27, 2007. It arrived in Port Elizabeth and was loaded on a Norfolk Southern [*11] railcar on or about December 14, 2007.

The Bill of Lading was prepared by Kavanagh and identifies Norfolk Southern as the initiating rail-carrier until Buffalo, New York, and Canadian National for the remaining transportation to rail destination. Therein, Enerco is listed as the shipper, and Kavanagh Logistics

---

[2] Phoenix disputes that it would have cost Enerco $500,000 to obtain full Carmack coverage from Norfolk Southern. However, the rail-carrier's 30(b)(6) witness, Ms. Achimasi, testified that this was a matter of internal policy. Specifically, Phoenix argues that the charge for full liability could be negotiated and changed. However this statement is not supported by the factual record on which Phoenix relies. Ms. Achimasi expressly testified that she would be speculating as to the possibility of full coverage for less than 25 percent without written authorization from the rail-carrier's law department to do so. Further, Ms. Achimasi expressed doubt that [*8] a lower rate would be approved by the law department. (Singleton Aff. Ex. D, Achimasi Dep., 129:2 - 132:3.)

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._2...    4/16

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 80 of 97 PageID: 251

8/24/2021

Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 4 of 14

2014 U.S. Dist. LEXIS 67515, *11

and Mr. Pharr are listed as the notifying party. Based on this information, Norfolk Southern issued a Waybill. Notably, neither the Bill of Lading nor the Waybill expressly state the availability of full Carmack coverage. However, the Bill of Lading identifies the Rate Transmittal as applying, which in turn identifies the rail-carrier's Conditions of Carriage as applying. As noted above, the Conditions of Carriage vaguely reference the availability of different rates pursuant to full Carmack liability. See footnote 1, supra, and accompanying text.

The Transformer was ultimately damaged en route and returned to Israel where it was repaired and reshipped to the receiver in Canada, at Phoenix's expense. Enerco's claim as a result of the damage to the Transformer apparently totals $911,233, exclusive of interest and costs, although the Court has not been directed to the facts in the [*12] summary judgment record to support this figure. Phoenix paid Enerco $750,000 pursuant to a settlement. (Singleton Aff. Ex. A, Muscatel Dep. at 146:11-20.)

Originally, according to Phoenix, "Phoenix paid Enerco in full for the loss." (Compl. ¶ 20, emphasis added.) Despite having alleged in the Complaint that Enerco was paid "in full" for its loss, Phoenix now disputes that the settlement "did not fully cover all losses suffered by Enerco." (Phoenix counterstatement to Def. Kavanagh's SUMF, ¶ 18.) In support of this contention, Phoenix references the deposition testimony of Mr. Muscatel, which provides:

Q. With respect to the amount of dollars that were paid by Phoenix, there was $750,000 paid from Phoenix to Enerco, correct?
A. Correct.
Q. But the total damages of Enerco were $850,000, is that right?
A. As I say, I don't have the exact numbers. I'm saying approximately or to that effect. Could be 850. Could be 900. I don't have the exact numbers.
Q. The transformer was not a total loss. It was repaired.
A. Correct.
Q. That's why the damages were not 1.9 million. Instead they were a smaller —
A. Correct.
Q. Was this transformer that was fixed, was that re-sent back to Canada?
A. Yes.

Q. And is it [*13] in operation now?
A. Yes.
Q. So the complaint provides in paragraph 20 —

that's Exhibit 9 — the shipment — on page four. The shipment of Enerco's transformer was insured by Phoenix and Phoenix paid Enerco in full for the loss. That's not correct. Enerco was not paid in full for the loss, correct?

A. Well, once we settled, we signed a document saying we don't have any other claims so that's why —

Q. They were paid pursuant to a settlement but not for full damages, correct?

A. Well, yes, that's correct. But we're not claiming any other thing from them.
(Muscatel Dep. at 146: 11 - 147:20, emphasis added.)[3]

Despite the previous mishap, Enerco selected Kavanagh to arrange for the transport of the Transformer's second shipment, and again selected Norfolk Southern to conduct it. Again, Enerco maintained limited liability coverage for the second [*14] shipment. Since, Enerco has shipped numerous additional transformers using Kavanagh's services (and continues to do so), in addition to using services of other entities. Importantly, certainly since the initiation of this suit, Enerco has been fully aware of the availability of full Carmack coverage, but has never chosen to purchase full coverage.

**B. Procedural History**

On January 21, 2011, Phoenix filed suit, as subrogated underwriter of Enerco, against Norfolk Southern and Kavanagh (collectively "Defendants"). First, Phoenix raises breach of contract and/or negligence claims against Defendants. Second, Phoenix brings a claim against Norfolk Southern for violation of the Carmack Amendment, and against Kavanagh for breach of its obligation as an agent due to the Carmack Amendment.

The Court is currently presented with three motions filed by the parties. Phoenix filed a motion for partial summary judgment on limitation of liability. Phoenix seeks to limit Defendants' affirmative defense to limit

---

[3] Phoenix additionally relies on Mr. Muscatel's Deposition pages 320:3-32:13 in support of its contention that Enerco was not paid in full for its loss when it settled with Phoenix. However, those pages are not included in any of the moving briefs for summary judgment, and therefore the Court relies on Mr. Muscatel's deposition testimony as set forth above.

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...   5/16

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 81 of 97 PageID: 252

8/24/2021

Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di...PDF

Page 5 of 14

2014 U.S. Dist. LEXIS 67515, *14

liability to $25,000. Phoenix argues that because federal law requires rail carriers to give shippers an alternative freight rate based on full liability, and the undisputed facts prove that no [*15] such alternative rate was given to Enerco, the Court should hold that the Defendants are not entitled to limit their liability and that Enerco is entitled to full provable damages.

Norfolk Southern moves the court for partial summary judgment that the subrogated claims be limited to a maximum of $25,000 because the rail-carrier advised Kavanagh that full Carmack coverage was available. Norfolk submits that an intermediaries' agreement with a carrier binds the shipper to the limited liability terms in those agreements. Additionally, Norfolk Southern argues that the state claims against it are preempted.

Kavanagh moves for summary judgment against Phoenix on all claims. Kavanagh emphasizes that the record does not support that Enerco would have opted for full Carmack coverage even if it were made available. Kavanagh argues that general subrogation principles bar Phoenix's claims against it where no causation or damages are evident. Kavanagh notes that the existence of the limited liability permitted Enerco to seek business and full insurance from Phoenix to begin with. Thus, Kavanagh argues that Phoenix is not even entitled to the $25,000 limited liability because it is barred from suing [*16] as subrogate.

## II. ANALYSIS

The Court is presented with three primary inquiries: 1) the issue of the availability of limited liability pursuant to the Carmack Amendment; 2) the issue of subrogation and specifically the extent to which Phoenix may subrogate Enerco's claims here; 3) the extent to which the state law claims against the Defendants are preempted.

### 1. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id.

[Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which [*17] that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The Court will view any evidence in favor of the nonmoving party and extend any reasonable favorable inferences to be drawn from that evidence to that party. Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999). See also Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (The district court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.").

### 2. The Carmack Amendment

The Carmack Amendment of 1906 to the Interstate Commerce Act is codified at 49 USC 11706, and provides for the liability of interstate carriers for damage to the goods transported. Under the Act, a rail carrier providing transportation or service subject to the jurisdiction of the Surface Transportation Board must issue a receipt or bill of lading for property it receives for transportation. 49 USC 11706(a). Along with any other rail carrier [*18] that delivers the property, the rail carrier is liable to the "person entitled to recover under the receipt or bill of lading," for the "actual loss or injury to the property caused by" the receiving carrier, the delivering carrier, or another carrier over whose line or route the property is transported. Id. 4 Thus, Carmack imposes upon "receiving rail carrier[s]" and "delivering rail carrier[s]" strict liability for damage caused during rail transportation under the bill of lading, regardless of

---

4 "A bill of lading records that a carrier has received goods from the party that wishes to ship them, states the terms of carriage, and serves as evidence of the contract for carriage." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 18-19, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004).

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...   6/16

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 82 of 97 PageID: 253

8/24/2021          Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 6 of 14

2014 U.S. Dist. LEXIS 67515, *18

which carrier caused the damage. Id.

The two often cited purposes of the Carmack Amendment are to (1) remove "the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods[,]" Reider v. Thompson, 339 U.S. 113, 119, 70 S. Ct. 499, 94 L. Ed. 698 (1950); and (2) "to protect shippers from carriers who would take advantage of their own superior knowledge and leverage when dealing with unwary shippers," Siren, Inc. v. Estes Express Lines, 249 F.3d 1268, 1271 (11th Cir. 2001). [*19] Carmack is designed to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading. See e.g., Usinor Steel Corp. v. Norfolk Southern Corp., 308 F. Supp. 2d 510 (D.N.J. 2004).

Except as otherwise provided by 49 USC 10101 et seq., the jurisdiction of the Surface Transportation Board is exclusive and includes remedies as set forth therein with respect to rates, practices, and services. 49 USCS 10501(a), (b). The statutory scheme sets forth that the policy of the U.S. Government in regulating the railroad industry includes: "allow[ance], to the maximum extent possible, competition and the demand for services to establish reasonable rates for transportation by rail;" "promot[ion] [of] a safe and efficient rail transportation system by allowing rail carriers to earn adequate revenues, as determined by the Board;" and "[maintenance of] reasonable rates where there is an absence of effective competition and where rail rates provide revenues which exceed the amount necessary to maintain the rail system and to attract capital[.]" 49 USCS 10101(1), (3), (6).

Of import here, the Carmack Amendment expressly allows the rail carrier [*20] and shipper to agree to a limitation of liability. Specifically, "the liability of the rail carrier for such property is limited to a value established by written declaration of the shipper or by a written agreement between the shipper and the carrier[.]" 49 USC 11706(c)(3)(A). Except as provided within subsection (c), a "rail carrier may not limit or be exempt from liability imposed under subsection (a) [49 USC 11706(a).]" 49 USC 11706(c)(1).

The Third Circuit Court of Appeals instructs that "a carrier must continue to offer two or more rates with corresponding levels of liability in order to successfully limit its liability pursuant to the Carmack Amendment." Emerson Elec. Supply Co. v. Estes Express Lines Corp., 451 F.3d 179, 187 (2006), relying in part on

Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc., 331 F.3d 834, 841-42 (11th Cir. 2003) ("[A] carrier wishing to limit its liability is still required to give the shipper a reasonable opportunity to choose between different levels of liability.").

Federal law requires that a carrier may limit its liability only if it takes the following four steps:

(1) Provide the shipper, upon request, a copy of its rate schedule; (2) give [*21] the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement.

ABB Inc. v. CSX Transportation Inc., 721 F.3d 135, 139 (4th Cir. 2013); See also Carmana Designs, Ltd. v. North American Van Lines, Inc., 943 F.2d 316, 319 (3d Cir. 1991).

Phoenix argues that Norfolk Southern is responsible for full Carmack liability because Enerco was unaware of the availability of different rates and corresponding levels of liability. However, here, Norfolk Southern clearly notified Kavanagh at the first instance of the availability of greater liability coverage. Specifically, Norfolk Southern's response to Kavanagh's price quote request provided: "Rate offered at maximum carrier's liability of $25,000 per shipment. Greater liability coverage is available, rates subject to change accordingly." Phoenix contests that Kavanagh's involvement does not insulate the rail-carrier from liability because "Norfolk Southern never provided Kavanagh with a full liability freight rate and the undisputed evidence is that Kavanagh [*22] did not know what the full liability freight rate was or that the shipper could obtain full liability from the railroad by paying a greater freight rate. So even if Kavanagh's knowledge theoretically could be imputed to the shipper, there was no knowledge to impute." (Pl.'s Opp. Br. to N.S.'s MSJ at 6.)

The record establishes that Mr. Pharr understood that greater liability rates were available; however the record is not clear as to his understanding of the availability of full Carmack liability. The Court notes that, despite Norfolk Southern's initial express offering of the availability of greater liability coverage at a different rate, the Bill of Lading (which was prepared by Kavanagh) does not clearly set forth as much. Rather, the Bill of Lading identifies the Rate Transmittal as applying, which in turn identifies the Norfolk Southern's Conditions of

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...          7/16

**Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 83 of 97 PageID: 254**

8/24/2021                Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 7 of 14

2014 U.S. Dist. LEXIS 67515, *22

Carriage which only vaguely reference the availability of different rates pursuant to full Carmack liability.

Phoenix argues that the Staggers Rail Act, *49 U.S.C. 10502(e)*, mandates that a rail carrier must provide a full liability rate pursuant to the Carmack Amendment. *Section 10502* applies to freight that has been exempted from [*23] regulation by the Surface Transportation Board. However, *Section 10502* does not apply to the transportation of electrical transformers. Indeed, the Surface Transportation Board has specifically carved out transformers from the exemption issued for electrical machinery. See *49 C.F.R. 1039.11* at 36.12. Thus, *Section 10502* is not applicable to this case.

The Court is guided by the Third Circuit Court of Appeals' instruction whereby "a carrier must continue to offer two or more rates with corresponding levels of liability in order to successfully limit its liability pursuant to the Carmack Amendment." *Emerson v. Estes, 451 F.3d at 187*. See also *ABB Inc. v. CSX, supra, 721 F.3d at 139*; *Carmana v. North American, supra, 943 F.2d at 319*. Norfolk Southern offered as much, and the Court is disinclined to reach the wording which Phoenix argues is mandatory, i.e., that the specific rate for full liability must be provided. Indeed, the terms of the Carmack Amendment do not require that a rail-carrier offer a full liability rate if it wishes to contractually limit its liability. Carmack allows for a limitation of liability "to a value established by written declaration of the shipper" or "by a written [*24] agreement between the shipper and the carrier[.]" *49 USC 11706(c)(3)(A)*. Based on the facts here, Norfolk Southern provided a reasonable opportunity for the choice between different levels of liability.

Furthermore, Agreements reached between carriers and intermediaries are binding with respect to limited liability terms within those agreements. *Norfolk Southern Ry. v. James N. Kirby, Pty Ltd., 543 U.S. 14, 125 S. Ct. 385, 160 L. Ed. 2d 283 (2004)*, is directly on point and guides the relevant analysis.

> When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed. The intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable. But when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it

engages.

> We derive this rule from our decision about common carriage in *Great Northern R. Co. v. O'Connor, 232 U.S. 508, 58 L. Ed. 703, 34 S. Ct. 380 (1914)*. In *Great Northern*, an owner hired a transfer company to arrange for the shipment [*25] of her goods. Without the owner's express authority, the transfer company arranged for rail transport at a tariff rate that limited the railroad's liability to less than the true value of the goods. The goods were lost en route, and the owner sued the railroad. The Court held that the railroad must be able to rely on the liability limitation in its tariff agreement with the transfer company. The railroad "had the right to assume that the Transfer Company could agree upon the terms of the shipment"; it could not be expected to know if the transfer company had any outstanding, conflicting obligation to another party. *Id., at 514, 58 L. Ed. 2d 703, 34 S. Ct. 380*. The owner's remedy, if necessary, was against the transfer company. *Id., at 515, 58 L. Ed. 2d 703, 34 S. Ct. 380*.

[ . . . ]

> We think reliance on agency law is misplaced here. It is undeniable that the traditional indicia of agency, the fiduciary relationship and effective control by the principal, did not exist between Kirby and ICC. See *Restatement (Second) of Agency § 1* (1957). But that is of no moment. The principle derived from *Great Northern* does not require treating ICC as Kirby's agent in the classic sense. It only requires [*26] treating ICC as Kirby's agent for a *single, limited* purpose: When ICC contracts with subsequent carriers for limitation on liability. In holding that an intermediary binds a cargo owner to the liability limitations it negotiates with downstream carriers, we do not infringe on traditional agency principles. We merely ensure the reliability of downstream contracts for liability limitations. In *Great Northern*, because the intermediary had been "entrusted with goods to be shipped by railway, and, nothing to the contrary appearing, the carrier had the right to assume that [the intermediary] could agree upon the terms of the shipment." *232 U.S., at 514, 58 L. Ed. 2d 703, 34 S. Ct. 380*. Likewise, here we hold that intermediaries, entrusted with goods, are "agents" only in their ability to contract for liability limitations with carriers downstream.

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...          8/16

Case 1:21-cv-14647-JHR-SAK    Document 11-1    Filed 08/24/21    Page 84 of 97 PageID: 255

8/24/2021    Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 8 of 14

2014 U.S. Dist. LEXIS 67515, *26

*Id. at 33-34*.[5]

Kirby explains that "a limited agency rule tracks industry practices." *Id. at 34*. While Kirby applies its reasoning in the intercontinental ocean shipping context, it is equally applicable to the general transportation logistics industry and specifically rail-carrier and broker arrangements. Kirby inherently recognizes this in constructing the limited agency rule based on previous Supreme Court precedent in Greater Northern wherein the [*28] rule applied in the context of a contract between a rail-carrier and the intermediary transfer company which arranged for the shipment. "The railroad 'had the right to assume that the Transfer Company could agree upon the terms of the shipment'; it could not be expected to know if the transfer company had any outstanding, conflicting obligation to another party." *Id. at 33-34*, supra.

The Court finds that Norfolk Southern met its obligation pursuant to the Carmack Amendment by providing a reasonable opportunity for the choice between different levels of liability. That the rail-carrier communicated the liability scheme with a logistics broker does not expose it to the default of full Carmack liability. Here, Kavanagh was entrusted to arrange for the transport of Enerco's goods, and was therefore Enerco's agent only in the ability to contract for liability limitations with the rail-carrier. Therefore, Phoenix's motion for partial summary judgment on limitation of liability is denied and Norfolk Southern's motion for partial summary judgment is granted as to the same. Phoenix's claims are therefore limited to a maximum of $25,000 pursuant to the terms of the shipping arrangement between [*29] Norfolk

Southern and Kavanagh, acting as Enerco's intermediary.

Phoenix dedicates two paragraphs in its twenty-three page brief in support of the notion that Kavanagh has no right to limit its liability. Without citation to any case law or statute, Phoenix avers that because the contract is limited to Norfolk Southern and does not include Kavanagh, Kavanagh is not entitled to the limitation. However, the motion does not address its claims against Kavanagh for breach of contract, negligence, or breach of its obligation as an agent due to the Carmack Amendment. Indeed, Phoenix's legal arguments are directed to the entitlement of Norfolk Southern to limit its liability pursuant to the Carmack Amendment. Therefore, Phoenix's motion to deny Kavanagh entitlement to limited liability is denied.

### 3. Subrogation

The Court is next presented with whether, and the degree to which, Phoenix may subrogate the claims here. Kavanagh moves for summary judgment relief as to all claims against it on the basis that they are barred due to general subrogation principles because Enerco has not suffered a loss and has not been damaged. Relatedly, Kavanagh argues that under well-established unified federal common [*30] law regarding subrogation claims such as this one, where a shipper obtains private insurance, a loss occurs during shipment, and the shipper's insurance company pays on that loss, there is no subrogation claim based upon a failure to make the shipper aware of the option of purchasing full coverage from the carrier. Notably, Phoenix does not offer any case law in its opposition to Kavanagh on the issue of subrogation, but simply distinguishes the cases on which Kavanagh relies. Phoenix additionally avers that at a minimum, Kavanagh's motion should be denied due to remaining questions of material fact as to whether Enerco consciously opted to forgo full Carmack coverage here, regardless of whether Kavanagh negligently or deliberately failed to give Enerco a choice.

It does not escape the Court that no customer of Kavanagh or Norfolk Southern has ever opted for full Carmack coverage; nor has Enerco ever opted for it, even after clearly being made aware of its availability following the initiation of this suit. Indeed, in order to opt for it, Enerco would have had to pay Norfolk Southern $500,000, whereas its floating, all-risk coverage with Phoenix was available at no more than $15,000 [*31] for the shipment.

---

[5] Additionally, the Supreme Court set forth three policy considerations to support its holding. First, Kirby persuasively explains that if the court were to find otherwise, "carriers would have to seek out more information before contracting, so as to assure themselves that their contractual liability limitations provide true protection. [*27] That task of information gathering might be very costly or even impossible, given that goods often change hands many times in the course of intermodal transportation." *Id.at 34-35*. Second, Kirby reasoned that "if liability limitations negotiated with cargo owners were reliable while limitations negotiated with intermediaries were not, carriers would likely want to charge the latter higher rates." *Id. at 35*. Relatedly, such a rule may conflict with law which promotes nondiscrimination in common carriage. Id. Third, Kirby noted the equitable result that the broker therein was the only party that definitely knew about and was party to both bills of lading at issue should bear responsibility for any gap between the liability limitations in those bills. Id.

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2…    9/16

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 85 of 97 PageID: 256

8/24/2021

Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 9 of 14

2014 U.S. Dist. LEXIS 67515, *31

Moreover, Enerco's corporate designee testified that it is "impossible" to know whether Enerco would have actually purchased full Carmack coverage, and that "nobody" at Enerco would know whether full Carmack coverage would have been purchased. His testimony set forth:

Q. So you have no idea, you're going to testify under oath, none whatsoever, whether or not Enerco would pay $500,000 or even $250,000 to have this additional liability coverage from Port Elizabeth to Ontario?

[An objection is interposed.]

THE WITNESS: Correct.

(Muscatel Dep., 343:3-6.)

Phoenix raises three claims against Kavanagh: breach of contract, negligence, and breach of its obligation as an agent due to the Carmack Amendment. As such, Phoenix bears the initial burden of proof that it is more likely than not that Enerco would have purchased full Carmack coverage. However, there is insufficient evidence to establish the existence of an element essential to its case, thus rendering all other facts immaterial. See Celotex, 477 U.S. at 323, supra. First, Enerco's corporate designee testified that it was "impossible" to know whether it would have been purchased, and that "nobody" would know the answer to [*32] the question. Second, Enerco has never opted to purchase full Carmack coverage, nor has any customer of Kavanagh or Norfolk Southern ever opted for it. Third, the basic business decision to opt for double-coverage at a total cost of $515,000, which represents over 25% of the value of the item itself, is not persuasive where Enerco already had a floating, all-risk policy with Phoenix which covered this shipment at a substantially lower rate of $15,000. There is simply no factual support on the record beyond pure speculation that Enerco would have opted for full Carmack coverage had Kavanagh relayed its availability. Instead, Phoenix attempts to argue that Enerco may have attempted to negotiate with Norfolk Southern for a lower rate for full coverage. However, Norfolk Southern's corporate designee testified that no such negotiation would have been available. (See supra, note 2.)

"It is well-established that subrogation is derivative in nature, placing the subrogee 'in the precise position of the one to whose rights and disabilities he is subrogated.'" Church Mutual Ins. Co. v. Palmer Construction Co., 153 Fed. Appx. 805, 808 (3rd Cir. 2005) (internal citation omitted). It is undisputed [*33] that Enerco assigned its rights of action here to Phoenix. The Carmack Amendment establishes rail

carrier liability to the "person entitled to recover under the receipt or bill of lading." 49 USC 11706(a). "The rights of action under the bill of lading may be properly assigned to another, who is then entitled to maintain the action against the rail carrier as the real party in interest." Hansa Meyer Transport GMBH & CO., KG v. Norfolk Southern Railway Co., 2008 U.S. Dist. LEXIS 43915 (D.S.C. 2008) (relying on Harrah v. Minnesota Min. and Mfg. Co., 809 F. Supp. 313, 318 (D.N.J. 1992)).

The New Jersey Supreme Court provides the basic framework of subrogation:

Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it. It is a right of ancient origin, having been imported from the civil law to serve the interests of essential justice between the parties. It is most often brought into play when an insurer who has indemnified an insured for damage or loss is subrogated to any rights that the insured may have against a third party, who is also liable for the damage or loss. In such a case it is only equitable and just [*34] that the insurer should be reimbursed for his payment to the insured, because otherwise either the insured would be unjustly enriched by virtue of a recovery from both the insurer and the third party, or in the absence of such double recovery by the insured the third party would go free despite the fact that he has the legal obligation in connection with the loss or damage.

Subrogation is highly favored in the law, although it is not an absolute right but rather applied under equitable standards with due regard to the legal and equitable rights of others:

The right of subrogation must be founded upon an equity just and reasonable according to general principles — an equity that will accomplish complete justice between the parties to the controversy. The one asserting the right cannot thereby profit from his own wrong; he must, himself, be without fault. . . . The process is analogous to the creation of a constructive trust, the creditor being compelled to hold his rights against the principal debtor, and his securities, in trust for the subrogee.

Standard Accident Ins. Co v. Pellecchia et al., 15 N.J. 162, 171-72, 104 A.2d 288 (1954) (internal citation omitted).

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ …   10/16

Case 1:21-cv-14647-JHR-SAK    Document 11-1    Filed 08/24/21    Page 86 of 97 PageID: 257

8/24/2021          Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 10 of 14

2014 U.S. Dist. LEXIS 67515, *34

Thus, *Pelluchia* instructs that an insurer **[\*35]** should be reimbursed for payments to the insured because equity would not prevail where a "third party would go free despite the fact that he has the legal obligation in connection with the loss or damage." Id. Simultaneously, the insurer cannot "profit from his own wrong; he must, himself, be without fault." Id.

Phoenix claims that Enerco apparently suffered $911,233 in damages, exclusive of interests and costs. The record does not set forth details of this apparent loss. Phoenix then paid Enerco $750,000 pursuant to a negotiated settlement. Curiously, however, although Enerco's initial loss was recouped in part by this settlement, Phoenix now apparently seeks to recover the original $911,233 loss. (See Pl.'s Opp. Br. to Kavanagh MSJ at 6, "Plaintiff's damages as a result of Kavanagh's acts or omissions therefore are the difference between $25,000 and Plaintiff's full provable losses.").

Kavanagh argues that Phoenix is not even entitled to recover the $25,000 limitation of liability because Enerco was already paid "in full" for its loss when it negotiated and settled its claims with Phoenix. (Compl. ¶ 20.) Kavanagh highlights Phoenix's intimation that Enerco was underpaid pursuant to **[\*36]** the $750,000 settlement. Indeed, this logic entails that because Phoenix underpaid Enerco in the first place, Phoenix would now be able to stand in Enerco's shoes to recoup that underpayment. Kavanagh contends, "[i]f this were true, Phoenix will have profited in the amount of $300,000 by breaching the Policy: it would get to retain the $150,000 that it wrongfully failed to pay to Enerco, and receive a $150,000 windfall from the Defendants to boot. This is nonsensical and contrary to the most basic principles of subrogation." (Kavanagh Reply Br. at 5.)

The Court is not persuaded that Enerco was wronged by Phoenix's failure to compensate it in full for its total damages. Enerco has brought no such claim here, and Mr. Muscatel indicated that pursuant to their settlement, Enerco is not "claiming any other thing from [Phoenix]." (Muscatel Dep., supra, at 146: 11 - 147:20.) As discussed at length above, Norfolk Southern and Kavanagh, as a limited agent for the purpose of contracting on behalf of Enerco, entered into a contract for rail shipment of goods. In filing its claims for breach of contract, negligence, and breach of obligation as an agent, Phoenix has failed to meet its basic burden **[\*37]** to establish that it is more likely than not that Enerco would have opted for full coverage. Phoenix's rights, as subrogate of Enerco's rights, are subject to the

limitation of liability which the parties agreed to. The record does not suggest that Phoenix committed a wrong or somehow defrauded Enerco, and thus equity would not prevail should those responsible for damaging the Transformer be given a free outright pass on liability.

Kavanagh argues that even this $25,000 cap is precluded based on federal common law regarding subrogation claims. Specifically, Kavanagh raises that "where a shipper obtains insurance to protect its shipment, a loss occurs during shipment, and the shipper's insurer pays on the loss, that insurer *may not* bring a subrogation claim against a party that allegedly failed to make the shipper aware of the option of purchasing full coverage from the transporting carrier transporting the shipment." (Kavanagh MSJ Br. at 2.) In turn, Phoenix attempts to distinguish the case law on which Kavanagh relies for this principle, however offers no case law to indicate otherwise.

The First and Ninth Circuits of Appeal instruct that the purchase of third-party insurance by a shipper **[\*38]** counsels against invalidating the carrier's limitation on liability:

> [T]he fact that third-party insurance was available, and was purchased by the shipper, counsels against invalidating the limitation on liability. "[A shipper] cannot contend that it was not given a 'fair opportunity' to opt for higher coverage [when the shipper] *did* opt for higher coverage when it insured [its package] through an independent entity." [internal citations omitted]. This is especially true when the plaintiff is not the shipper itself, but the subrogated third-party insurer of the package. In such a case, "it is always in the best interest of a shipper's insurance company to argue that the shipper was denied a fair opportunity to opt for higher liability. . . . 'As best we can tell, [the insurer] is now bringing this lawsuit in an attempt to shift . . . the burden of loss it was paid to insure.'" *Travelers Indem.*, 26 F.3d at 900 (citing *Carman Tool & Abrasives, Inc. v. Evergreen Lines*, 871 F.2d 897, 901 n. 10 (9th Cir. 1989)). "The [third-party] insurer merely stands in the shoes of the shipper, however, and cannot argue as if the shipper did not make the decision to insure separately." *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1199 n.4 (1999).

*Kemper Ins. Co. v. Federal Express Corp.*, 252 F.3d 509, 513-14 (1st Cir. 2001).

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2...          11/16

2014 U.S. Dist. LEXIS 67515, *38

In  [*39] Kemper, the First Circuit Court of Appeals examined a suit brought by an insurance company as subrogee to invalidate the limitation of liability provided for in the relevant air shipment documents. The appeals court explained that "[w]hen a shipper (or, as here, a subrogee standing in place of a shipper) contests the validity of a contractual clause that limits an air carrier's liability, we apply federal common law." Id. at 512 (citation omitted). The appeals court found that the fact the shipper sought third-party insurance is an indication that the shipper intended to limit its liability with the air carrier. The First Circuit Court of Appeals further explained: "Lastly, we must point out that [the insurance company] is in no way harmed by this type of limitation clause; in fact, it is the very existence of such a limitation that allows [the insurance company] to market third-party package insurance." Kemper, 252 F.3d at 514. See also Travelers Indem. Co. v. Houston et al., 26 F.3d 895, 900 (9th Cir. 1994) ("Why would [the shipper] increase its costs by insuring the same cargo twice?").

The District Court of New Jersey has recognized this principle where the procurement of insurance  [*40] indicates a shipper's awareness of its limitation of liability with a sea carrier. See Ferrostaal, Inc. v. M/V Sea Phoenix et al., 2004 U.S. Dist. LEXIS 27483 (D.N.J. Dec. 14, 2004) (J. Brotman); aff'd on other grounds, 447 F.3d 212 (3d Cir. 2006).

Specifically, Judge Brotman noted:

> Plaintiff chose to insure the cargo, which indicates to the Court that Plaintiff was aware that its recovery would be limited and may not fully compensate any potential loss. See, e.g., Travelers Indem. Co. v. Vessel Sam Houston, 26 F.3d 895 at 900 (9th Cir. 1994) ("a shipper who chooses to insure its cargo through an independent insurance company has made a conscious decision not to opt out of COGSA's liability limitation."); Carman Tool & Abrasives, Inc. v. Evergreen Lines, 871 F.2d 897, 901, n. 10 (9th Cir. 1989) ("Indeed, there is every reason to believe that the shipper [,] by acquiring insurance] made a knowing and deliberate choice in foregoing the additional cost that would have been incurred in raising the liability limit[.]").

> Ferrostaal, 2004 U.S. Dist. LEXIS 27483 at *19-20.

Phoenix argues that because the Third Circuit Court of Appeals in Ferrostaal rejected the "fair opportunity doctrine," the subrogation  [*41] analysis is inapplicable here. However, as the Third Circuit Court of Appeals

explained at length therein, the fair opportunity doctrine relates to a separate inquiry regarding the availability for a shipper to opt for increased coverage at a higher rate. Specifically, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. 1300-1315, set forth a scheme by which the shipper is bound by a limited liability unless the shipper has acknowledged a higher value or agreed to a higher limit originally proposed by the shipper. The fair opportunity doctrine, which was ultimately rejected by Third Circuit Court of Appeals, relates to COGSA's inquiry over rates. That inquiry is analogous to the scheme set forth by the Carmack Amendment regarding the carrier's offering of a reasonable opportunity for the choice between different levels of liability, as detailed in Part Two of the Discussion section above. As the Third Circuit Court of Appeals explained, "the discussion of 'fair opportunity' is best read as explaining the rationale behind the Interstate Commerce Act's requirement of a writing." 447 F.3d at 223. The appeals court further noted that the text of COGSA is unlike that of the Interstate  [*42] Commerce Act insofar as the latter has an explicit notice provision while the former does not, and therefore the COGSA should not be read as though it contains an implied notice provision. 447 F.3d at 227.

Thus, the Third Circuit Court of Appeals held in Ferrostaal that the fair opportunity doctrine is inconsistent with the COGSA, and recognized that while the COGSA does not include an explicit or implied notice provision, the Interstate Commerce Act does. Despite Phoenix's averments, that analysis is apart from the indication that a shipper sought third-party insurance coverage due to its awareness of its limitation of liability agreement with the carrier. Indeed, Ferrostaal was not a subrogation case, and the Third Circuit Court of Appeals affirmed the District Court's result without commenting on Judge Brotman's endorsement of Carman Tool and its progeny. Moreover, in dismissing the applicability of the fair opportunity doctrine with respect to COGSA, the Third Circuit Court of Appeals highlighted its prevention of a windfall for subrogated insurers: "Insurance through third-party maritime insurers is usually cheaper and more convenient than insurance by the carrier and prudent shippers  [*43] will insure their cargo regardless of the allocation of liability for negligent damage. The fair opportunity doctrine, in seeking to vindicate the rights of shippers, confers a windfall on subrogated insurers." 447 F.3d at 228.

Based on the foregoing, the Court finds that Phoenix, as Enerco's subrogee, is limited to a $25,000 cap in seeking restitution for damage to the Transformer. To suggest otherwise would be inequitable and allow those

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 88 of 97 PageID: 259

8/24/2021          Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 12 of 14

2014 U.S. Dist. LEXIS 67515, *43

responsible for damage to be held unaccountable. Kavanagh's argument that even this cap should be denied is not persuasive, and indeed the cases on which Kavanagh relies upheld the limitation of liability rather than invalidating it altogether.[6] As explained above, there is insufficient evidence to establish that Enerco would have opted for full Carmack liability. Enerco's corporate designee testified that it was "impossible" to know whether it would have been purchased and that "nobody" would know the answer to the question. Moreover, Enerco had never opted to purchase full coverage, nor has any customer of Kavanagh or Norfolk Southern ever opted for it. Further, the basic business decision to opt for double-coverage at a total cost of $515,000,  [*44] which represents over 25% of the value of the items itself, is not persuasive where Phoenix's all-risk policy covered this shipment for $15,000. Last, Enerco's procurement of third party insurance coverage further corroborates the record that Enerco was aware of its limitation of liability with Norfolk Southern. The Court declines the invitation to provide Phoenix a windfall where the very existence of the limitation of liability allows for Phoenix to market third party insurance coverage in the first place.

Kavanagh's motion for summary judgment is therefore granted in part. Phoenix may subrogate the claims against Kavanagh only to the extent of the limitation of liability.

### 4. Preemption

In addition to violations pursuant to the Carmack Amendment, Phoenix brings various state claims

---

[6] See e.g., *Carman Tool, 871 F.2d 897 (9th Cir. 1989)* (limitation of liability clause upheld in case brought by insurance company in the name of shipper which was already compensated by insurer); *Travelers Indemnity Company v. Vessel Sam Houston, 26 F.3d 895, 898 (9th Cir. 1994)* (limitation of liability provision upheld in insurer's subrogation action); *Read-Rite Corp v. Burlington Air Express, Ltd., 186 F.3d 1190 (9th Cir. 1999)* (limitation of liability provision upheld in action brought by shipper and insurance company for damage arising from carriage of goods by air); *Kemper Ins. Companies v. Federal Exp. Corp., 252 F.3d 509 (1st Cir. 2001)* (limitation of liability found valid  [*45] in subrogation action for damage arising from air shipment); *Ferrostaal, Inc. v. M/V Sea Phoenix, 2005 A.M.C. 581 (D.N.J. 2004)* (limitation of liability upheld in action brought by insured shipper for damage arising from sea shipment), aff'd *447 F.3d 212 (3d Cir. 2006))*.

against both Norfolk Southern and Kavanagh. Norfolk Southern moves the Court for summary judgment on the contract and negligence claims against it and argues that these state claims are preempted by Carmack. In opposition to the motion, Phoenix urges the Court that the issue is premature because it is beyond the scope of review authorized by the Court. However, the docket reflects a text order dated April 27, 2012 which instructs that "[t]he parties' request to file motions for summary judgment as to the application of the Carmack amendment is GRANTED." The issue presented is whether the state law claims are preempted by Carmack, and therefore  [*46] preemption is necessarily within the scope of review authorized. The Court considers it here for efficiency.

Courts recognize three ways that federal law may preempt or displace state law: (1) express preemption, which requires an express statutory command, (2) field preemption, which requires that a federal law "so thoroughly occupy a legislative field as to make reasonable the interference that Congress left no room for the state to supplant it," and (3) conflict preemption, in which state law makes it impossible to comply with both state and federal law. *Orlick v. J.D. Carton & Son, Inc., 144 F. Supp. 2d 337, 344 (D.N.J. 2001)* (citations omitted).

It is well settled that Carmack preempts all state law causes of action against rail-carriers. "It is generally accepted that the principal purpose of the [Carmack] Amendment was to achieve uniformity, and thus Congress enacted the amendment to 'take possession of the subject of interstate carriers liability . . . and supersede all state regulation with reference to liability for lost or damaged property.'" *Unisor Steel Corp. v. Norfolk Southern Corp., 308 F. Supp. 2d 510, 517 (D.N.J. 2004)* (quoting *Orlick, 144 F. Supp. 2d at 345*). See also *Rini v. United Van Lines, 104 F.3d 502, 504 (1st Cir. 1997)*;  [*47] *Gordon v. United Van Lines, Inc., 130 F. 3d 282, 287-88 (7th Cir. 1997)* (Carmack exists to provide "a measure of predictability for interstate carriers in the exposure to damages they face.").

The Carmack Amendment was originally enacted to govern bills of lading in the rail transportation industry. Accordingly, *Section 11706* imposes strict liability upon rail carriers. See *49 USC 11706*, supra at 12. In its current form, the Carmack Amendment provides a uniform national system of liability for interstate transport by rail and motor carriers. See id. and *49 USC 14706*, respectively. Thus, the state law contract and negligence claims against Norfolk Southern are clearly

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ ...          13/16

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 89 of 97 PageID: 260

8/24/2021   Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 13 of 14

2014 U.S. Dist. LEXIS 67515, *47

preempted and must be dismissed.

The Court reserves for another day judgment as to preemption of the claims against Kavanagh. The parties have not moved for consideration on this issue, and there appears to be a split in the courts regarding the extent to which Carmack preempts claims against brokers, at least in their arrangements with motor carriers pursuant to *Section 14706*.[7],[8] See *Ameriswiss*

---

[7] *Section 14704* correspondingly imposes rights and remedies upon persons injured by transportation by motor carrier and the procurement of that transportation, including brokers. See *49 USC 14704*; *49 USC 13501 et seq.*

A broker is defined therein as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by [*49] motor carrier by compensation." *49 USC 13102(2)*.

Further, Carmack defines covered transportation services broadly. The term "transportation" includes:

(A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and

(B) *services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit,* refrigeration, icing, ventilation, storage, handling, packing, unpacking, *and interchange of passengers and property.*

*49 USCS § 13102(23)* (emphasis added).

[8] Moreover, federal-state relations pursuant to the interstate transport of property by motor carriers, water carriers, brokers, and freight forwarders is expressly preempted by the Interstate Commerce Commission Termination Act ("ICCTA") (federal authority over intrastate transportation):

a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect [*50] to the transportation of property.

*49 USC 14501(c)(1)*

"The ICCTA preemption provision 'had been part of the Federal Aviation Administration Authority Act ('FAAAA') passed by Congress in 1994.'" *Ameriswiss Technology, LLC v. Midway Line of Illinois, Inc., et al., 888 F. Supp. 2d 197, 204 n.*

*Technology, LLC v. Midway Line of Illinois, Inc. et al., 888 F. Supp. 2d 197 (D.N.H. 2012)* [*48] (subrogated negligence claim against broker for damage arising from truck shipment is impliedly and expressly preempted by Carmack and the ICCTA respectively, however the contract claim against broker is not preempted); *Atlas Aerospace LLC v. Advanced Transportation Inc. et al., 2013 U.S. Dist. LEXIS 58378 (D.Kan. April 24, 2013)* (breach of contract claim against the broker for damage arising from truck transport is outside of the scope of Carmack and escapes preemption); but see *Curb Technologies, LLC v. Somerset Logistics, LLC, 2013 U.S. Dist. LEXIS 94554 (July 8, 2013)* (denying removal jurisdiction for claims against the broker because Carmack does not preempt them).

Thus, *Section 14704* of Carmack at least impliedly preempts the field with respect to broker liability in a negligence action involving motor carriers, and the ICCTA expressly preempts the query as to brokers with respect to motor carrier arrangements. See supra note 7, 8. Meanwhile, the portion of Carmack dealing directly with rail carriers, *49 USC 11706*, defines "rail carrier" fairly broadly to mean "a person *providing* common carrier railroad transportation for compensation," with certain exceptions which are not applicable here. *49 USCS 10102(5)* (emphasis added). Further, "person" is defined therein as "a trustee, receiver, assignee, or personal representative of a person." *49 USCS 10102(4)*. Last, "transportation" [*51] is also defined broadly and includes:

(A) A locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, *property*, facility, instrumentality, or equipment of any kind *related to the movement of* passengers or *property*, or both, *by rail*, regardless of ownership or an agreement concerning use; and

(B) *Services related to that movement, including* receipt, delivery, elevation, *transfer in transit*, refrigeration, icing, ventilation, storage, handling, *and interchange* of passengers and property.

*49 USCS 10102* (emphasis added).

In sum, the Carmack Amendment covers every detail of claims against rail-carriers and therefore the state law claims against Norfolk Southern are preempted. However, the Court leaves for another day the degree to

---

7 (D.N.H. 2012) (quoting *Mastercraft Interiors, Ltd. V. ABF Freight Sys., Inc., 284 F. Supp. 2d 284, 285 (D. Md. 2003)* and citing *49 USC 11501(h)(1)*).

Marc Jones

chrome-extension://oemmndcblboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ ...   14/16

8/24/2021

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 90 of 97 PageID: 261

Phoenix Ins. Co. v. Norfolk S. R.R. Corp. - BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ 2014 U.S. Di.PDF

Page 14 of 14

2014 U.S. Dist. LEXIS 67515, *51

which negligence and contract law claims against brokers are preempted with respect to rail-carrier logistics.

## III. CONCLUSION

For the foregoing reasons, Phoenix's partial motion for summary judgment is denied. Norfolk Southern's partial motion for summary judgment on limited liability and preemption of the state law breach of contract and negligence claims is granted in full. Kavanagh's motion for summary judgment on all claims against it is granted in [*52] part, to the extent that the subrogation action may proceed up to the limitation of liability. There remain the Carmack Amendment claim against Norfolk Southern subject to limited liability, and the state law claims against Kavanagh for breach of contract, negligence, and breach of its obligation as an agent, also subject to the limitation of liability.

/s/ Dickinson R. Debevoise

DICKINSON R. DEBEVOISE, U.S.S.D.J.

**Date**: May 16, 2014

---

End of Document

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Phoenix Ins. Co. v. Norfolk S. R.R. Corp._ ...          15/16

8/24/2021

EXHIBIT "L"

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 93 of 97 PageID: 264

8/24/2021        Non Typical, Inc. v. Transglobal Logistics Group Inc. - BMW - Research - Non Typical_ Inc. v. Transglobal Logistics Group Inc._.PDF

 Neutral
As of: August 24, 2021 3:15 PM Z

# *Non Typical, Inc. v. Transglobal Logistics Group Inc.*

United States District Court for the Eastern District of Wisconsin

May 24, 2012, Decided; May 28, 2012, Filed

Case No. 10-C-1058; Case No. 11-C-0156

**Reporter**
2012 U.S. Dist. LEXIS 73452 *; 2012 WL 1910076

NON TYPICAL, INC., and THE HANOVER INSURANCE COMPANY, Plaintiffs, v. TRANSGLOBAL LOGISTICS GROUP INC., SCHNEIDER LOGISTICS INTERNATIONAL, INC., HARTFORD ACCIDENT AND INDEMNITY COMPANY, and HARTFORD FIRE INSURANCE COMPANY, Defendants. HANOVER INSURANCE COMPANY and CITIZENS INSURANCE COMPANY OF AMERICA, Plaintiffs, v. TRANSGLOBAL LOGISTICS GROUP INC. SCHNEIDER LOGISTICS INTERNATIONAL, INC., HARTFORD ACCIDENT AND INDEMNITY COMPANY, and HARTFORD FIRE INSURANCE COMPANY, Defendants.

**Prior History:** *Non Typical Inc. v. Transglobal Logistics Group Inc., 2011 U.S. Dist. LEXIS 50597 (E.D. Wis., May 10, 2011)*

## Core Terms

negligence claim, motion to dismiss, preempted, transportation, broker, cameras, preemption, pleadings, carriers, motor carrier

**Counsel:** [*1] For Non Typical Inc (1:10-cv-01058-WCG), Plaintiff: Chad R Levanetz, Metzler Timm Treleven SC, Green Bay, WI.

For Hanover Insurance Company (1:10-cv-01058-WCG), Involuntary Plaintiff: Kenneth R Feit, Tell Cheser & Breitbart, Garden City, NY.

For Citizens Insurance Company of America (1:10-cv-01058-WCG), Consolidated Plaintiff: Kenneth R Feit, Tell Cheser & Breitbart, Garden City, NY.

For Schneider Logistics International Inc, doing business as Schneider Logistics (1:10-cv-01058-WCG), Defendant: Jonathan T Smies, LEAD ATTORNEY, Joseph M Nicks, Godfrey & Kahn SC, Green Bay, WI.

For Hartford Accident & Indemnity Company, Hartford Fire Insurance Company (1:10-cv-01058-WCG), Defendants: Alexander W Ross, Stephen P Eisenberg,

Leahy Eisenberg & Fraenkel Ltd, Chicago, IL.

For Hartford Accident & Indemnity Company, Hartford Fire Insurance Company (1:10-cv-01058-WCG), Consolidated Defendants: Alexander W Ross, Stephen P Eisenberg, Leahy Eisenberg & Fraenkel Ltd, Chicago, IL.

For Schneider Logistics International Inc (1:10-cv-01058-WCG), Cross Claimant: Jonathan T Smies, LEAD ATTORNEY, Joseph M Nicks, Godfrey & Kahn SC, Green Bay, WI.

For Hanover Insurance Company, as subrogee of Non Typical Inc, Citizens [*2] Insurance Company of America, as subrogee of Non Typical Inc (1:11-cv-00156-WCG), Plaintiffs: Kenneth R Feit, Tell Cheser & Breitbart, Garden City, NY.

For Schneider Logistics International Inc (1:11-cv-00156-WCG), Defendant: Joseph M Nicks, Godfrey & Kahn SC, Green Bay, WI.

**Judges:** William C. Griesbach, United States District Judge.

**Opinion by:** William C. Griesbach

## Opinion

### ORDER GRANTING MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Before me now is a Motion for Partial Judgment on the Pleadings filed by Schneider Logistics International, Inc. (Schneider) to dismiss the negligence claims asserted by the Plaintiffs in the above-entitled consolidated cases. For the reasons discussed herein, Schneider's motion will be granted.

### BACKGROUND

**Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 94 of 97 PageID: 265**

8/24/2021          Non Typical, Inc. v. Transglobal Logistics Group Inc. - BMW - Research - Non Typical_ Inc. v. Transglobal Logistics Group Inc._.PDF

Page 2 of 4

2012 U.S. Dist. LEXIS 73452, *2

This case concerns a loss resulting from the theft in Illinois of a truckload of digital cameras which was in the process of being transported from China for delivery to the Plaintiff, Non Typical, Inc. (Non Typical), in De Pere, Wisconsin. The cameras were under control of a motor carrier, Transglobal Logistics Group Inc. (Transglobal) at the time of the theft. Schneider's role, as explained by the Amended Complaints in this action, was limited to assisting Non Typical to arrange for [*3] transportation of the cameras. Schneider did not serve as either a carrier or freight forwarder; it served as a "broker." [1]

Non Typical filed its action in this Court in November 2010. Its Complaint alleged several causes of action against Transglobal, but just one (for negligence) against Schneider. (ECF No. 1.) Schneider moved to dismiss the negligence claim because it failed to state a claim upon which relief could be granted. (ECF No. 7.) Instead of contesting the Motion to Dismiss, Non Typical filed an Amended Complaint which alleged additional claims against Schneider, including breach of contract, breach of implied covenant of good faith and fair dealing, and promissory estoppel. (ECF No. 12.) Schneider moved to dismiss all of the causes of action against it in the Amended [*4] Complaint. (ECF No. 13.) The Court decided Schneider's Motion to Dismiss on May 11, 2011. It dismissed Non Typical's claims against Schneider for breach of the duty of good faith and fair dealing and promissory estoppel, but denied the Motion to Dismiss with respect to the contract and negligence claims. (ECF No. 27.)

In the meantime, Non Typical's insurers, Hanover Insurance Company (Hanover), and Citizens Insurance Company of American (Citizens), filed an action to assert their subrogated interests arising out of payments they made to Non Typical for theft of the cameras in the United States District Court for the Southern District of New York. (ECF No. 1, Case No. 11-CV-00156.) On February 9, 2011, the case was transferred to this Court and later consolidated with the Non Typical case pursuant to *Rule 42(a)(2) of the Federal Rules of Civil Procedure.* (ECF No. 16.) Schneider then moved to dismiss the claims by Hanover and Citizens for the same reasons it moved to dismiss Non Typical's claims. (ECF No. 23.)

Based on the Court's decision on Schneider's Motion to Dismiss Non Typical's claims, Hanover and Citizens agreed to amend its Complaint to allege only contract and negligence claims [*5] against Schneider. In return, Schneider withdrew its Motion to Dismiss. (ECF Nos. 29 and 30.) On July 29, 2011, Hanover and Citizens filed a Second Amended Complaint which added Hartford Accident and Indemnity Company and Hartford Fire Insurance Company (collectively, Hartford) as Defendants. The only claims asserted against Schneider are for breach of contract and negligence. (ECF No. 55.) Non Typical followed shortly thereafter with its own Second Amended Complaint to add Hartford as a Defendant. Consistent with the Court's decision on Schneider's Motion to Dismiss, Non Typical's Second Amended Complaint asserts only breach of contract and negligence claims against Schneider. (ECF No. 58.)

## LEGAL STANDARD

*Rule 12(c) of the Federal Rules of Civil Procedure* permits a party to seek judgment on the pleadings after the pleadings have closed. *Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009).* A motion under *Rule 12(c)* is reviewed under the same standard employed when reviewing a motion to dismiss under *Rule 12(b)(6)* for failure to state a claim. *Id.* (citing *Pisciotta v. Old Nat'l. Bancorp, 499 F.3d 629, 633 (7th Cir. 2007)).* A motion for judgment on the pleadings will [*6] not be granted where there are unresolved issues of material fact. *Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007).*

## DISCUSSION

### 1. Preemption

Schneider first contends the Federal Aviation Administration Authorization Act of 1994 (FAAA) preempts the negligence claims against it. The FAAA includes the following provision for federal preemption of state laws that attempt to regulate transportation by motor carriers:

> [A] State . . . may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route, or service of

---

[1] Schneider's status in the transaction was discussed in the Court's decision on Schneider's Motion to Dismiss. The Court decided that the pleadings did not allege a claim under the Carmack Amendment, *49 U.S.C. § 14706,* because Schneider is not alleged to have provided actual transportation of property. (ECF No. 27 at 4.) In this transaction, Schneider was a "broker" because it did not transport the cameras.

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Non Typical_ Inc. v. Transglobal Logistics Gro…          3/6

2012 U.S. Dist. LEXIS 73452, *6

any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). One purpose for federal preemption under the regulatory scheme was to eliminate non-uniform state regulation of motor carriers which had caused significant inefficiencies, increased costs, reduced competition, inhibited innovation and technology, and limited the expansion of markets. Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 368, 128 S. Ct. 989, 169 L. Ed. 2d 933 (2008). Courts have honored the intent of Congress and have determined that the language "related to" in [*7] the FAAA should be interpreted broadly.

The Seventh Circuit has interpreted this scheme to mean a state law is preempted if that law expressly references airlines rates, routes, or services or has a significant economic impact upon them. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1432 (7th Cir. 1996). State common law counts as an "other provision having the force and effect of law." See American Airlines, Inc. v. Wolens, 513 U.S. 219, 233 n.8, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995); Morales v. Trans World Airlines, Inc., 504 U.S. 374, 388, 112 S. Ct. 2031, 119 L. Ed. 2d 157 (1992); see also Medtronic, Inc. v. Lohr, 518 U.S. 470, 502—03, 116 S. Ct. 2240, 135 L. Ed. 2d 700 (1996) (plurality opinion), id. at 503—05 (Breyer, J., concurring), id. at 509—12 (O'Connor, J., concurring in part and dissenting in part) (characterizing tort remedies as regulatory provisions for purposes of preemption clauses in another statute).

While Plaintiffs argue for a narrow reading of preemption in this field, particularly against brokers, courts in this Circuit have broadly interpreted preemption under the ADA and the FAAA. See, e.g., Williams v. Midwest Airlines, Inc., 321 F. Supp. 2d 993, 995—96 (E.D. Wis. 2004) (holding that a passenger's tort claims arising out of an airline's [*8] refusal to board him were preempted); see also Travel All Over the World, Inc., 73 F.3d at 1432 n.8 (noting punitive damages are preempted because they represent "an enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement" (citations omitted)). Other district courts outside this Circuit have responded similarly. See, e.g., Yellow Transportation, Inc. v. DM Transportation Management Services, No. Civ. A. 2:06-CV-1517-LDD, 2006 U.S. Dist. LEXIS 51231, 2006 WL 2871745 (E.D. Pa. July 14, 2006) (holding that claims of misrepresentation, unjust enrichment, quantum meruit, and fraud by an interstate

motor carrier against a freight broker were preempted by 49 U.S.C. § 14501(c)(1)); Kashala v. Mobility Servs. Int'l, LLC, No. 07-CV-40107-TSH, 2009 U.S. Dist. LEXIS 64334, 2009 WL 2144289 (D. Mass. May 12, 2009) (dismissing a negligence claim against a transportation broker for loss and damages to personal property because the claims against the broker were preempted by the FAAA); Huntington Operating Corp. v. Sybonney Express, Inc., No. H-08-781, 2010 U.S. Dist. LEXIS 55591, 2010 WL 1930087 (S.D. Tex. May 11, 2010) (holding that 49 U.S.C. § 14501 broadly preempted and thus dismissing negligence claims against the broker).

Given this precedent [*9] and the history of a broad interpretation of federal preemption, I agree with Schneider that the negligence claim is preempted by the FAAA. Relevant precedent indicates tort claims (such as negligence) can be preempted even though state tort law does not directly reference rates, routes, or services. And because the statute expressly lists brokers, I see no reason to treat them differently from traditional carriers. This finding is further consistent with the amount at stake in the case. Non Typical maintains Schneider's potential liability is in excess of a million dollars. Schneider thus alleges that permitting negligence claims against it in its role as broker would "plainly have an economic effect on the rates it charges and how it provides its transportation brokerage services." (ECF No. 96 at 7.) See, e.g., S.C. Johnson & Son, 2011 U.S. Dist. LEXIS 114036, 2011 WL 4625655 at *4 ("enforcement of plaintiff's fraudulent misrepresentation claim would have a prescriptive effect, essentially regulating the practices of defendant carriers (as in Wolens) or would result in replacement of the parties' original bargain with something else (as in Mesa Airlines). In either case, enforcement of plaintiff's claim would [*10] relate to defendant carriers' prices, routes, or services."). I thus am convinced that the negligence claims against Schneider are preempted by the FAAA scheme.

## 2. Failure to State a Claim Under Wisconsin Law

Schneider alternatively moves to dismiss the negligence claim on the ground that Plaintiffs have failed to state a claim under Wisconsin law. Both of the Second Amended Complaints allege breach of contract claims against Schneider. Although the precise terms of the contract may be in dispute, it is undisputed that Non Typical and Schneider had an agreement for Schneider to serve as a broker to assist Non Typical in arranging for transportation of the cameras from China to

Case 1:21-cv-14647-JHR-SAK   Document 11-1   Filed 08/24/21   Page 96 of 97 PageID: 267

8/24/2021   Non Typical, Inc. v. Transglobal Logistics Group Inc. - BMW - Research - Non Typical_ Inc. v. Transglobal Logistics Group Inc._.PDF

Page 4 of 4

2012 U.S. Dist. LEXIS 73452, *10

Wisconsin. Non Typical and its insurers have alleged Schneider breached this contract by not exercising reasonable care in selecting Transglobal as one of the carriers for transportation of the cameras and by failing to verify that Transglobal had enough insurance to cover loss of the cameras. They also assert separate causes of action against Schneider for negligence.

Wisconsin does not recognize an inherent cause of action for every negligent performance of a contract. A tort action, such as a negligence claim, [*11] may only be asserted if there is a duty *independent* of the performance of the contract. Under this test, the existence of a contract is ignored when determining whether alleged misconduct is actionable in tort. *McDonald v. Century 21 Real Estate Corp., 132 Wis. 2d 1, 6, 390 N.W.2d 68 (Ct. App. 1986)*; *see also Dvorak v. Pluswood Wisconsin, Inc., 121 Wis.2d 218, 220, 358 N.W.2d 544, 545 (Ct. App. 1984)*. If a plaintiff cannot prove the existence of an independent duty, his remedy is limited to suing for breach of contract. *Madison Newspapers v. Pinkerton's Inc., 200 Wis. 2d 468, 475, 545 N.W.2d 843 (Ct. App. 1996)*.

The Second Amended Complaint contains no claims of negligence founded upon *independent* duties owed by Schneider. It alleges, in part, that Non Typical notified Schneider that the goods were high-value goods (ECF No. 58 ¶ 45) and that Schneider breached its obligation to inform Transglobal that the high-value cameras were to be properly secured at all times during transport and storage. (*Id.* ¶ 52.) According to Plaintiffs, this duty is an independent one because it reaches beyond the confines of the contract and focuses on the failed duties of Schneider with respect to communications between [*12] the parties and the standard of care in the transportation industry. (ECF No. 93 at 10.) But Schneider would not have had any reason to communicate with either Non Typical or Transglobal if it did not have a contract with Non Typical. Schneider's obligation to communicate with them in a particular way, if any, was part of its contractual obligation to Non Typical, not part of a duty to Non Typical separate and apart from the contract. Plaintiffs further attempt to argue that the issue is premature, as the precise terms of the contract may be in dispute, but whether or not this is true it has no bearing on whether Schneider had an independent duty giving rise to a tort action. Non Typical's further argument that Schneider's motion is precluded by the law of the case is rejected as well. The issue was not clearly presented on the previous motion, and it is clear from the Court's decision that its treatment of the issue was not intended as final. Schneider's

motion for judgment on the pleadings is thus also granted on this ground.

## CONCLUSION

In sum, the negligence claims against Schneider are preempted by the FAAA. The negligence claims are alternatively dismissed for failing to state a [*13] claim under Wisconsin law. Schneider's motion for partial judgment on the pleadings (ECF No. 90) is accordingly GRANTED.

Dated this 24th day of May, 2012.

/s/ William C. Griesbach

William C. Griesbach

United States District Judge

End of Document

Marc Jones

chrome-extension://oemmndcbldboiebfnladdacbdfmadadm/file:///C:/MRJ Documents/BMW - Research - Non Typical_ Inc. v. Transglobal Logistics Gro…   5/6